

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-8-1994

# United States of America v. Knox

Precedential or Non-Precedential:

Docket 92-7089

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States of America v. Knox" (1994). *1994 Decisions.* Paper 41.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/41

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 92-7089
_____


UNITED STATES OF AMERICA

v.

STEPHEN A. KNOX,

Appellant

_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 91-00074)
_____


Argued August 17, 1992

Decided October 15, 1992

Certiorari Granted June 7, 1993

On Remand from the Supreme Court of the United States
November 1, 1993

Reargued April 27, 1994

Before:  HUTCHINSON, COWEN and WEIS, Circuit Judges

(Filed June 9, 1994)


_____


Alan Silber (argued)
Hayden, Perle & Silber
1500 Harbor Boulevard
Lobby A, 2nd Floor
Weehawken, NJ  07087

COUNSEL FOR APPELLANT
STEPHEN A. KNOX

Kathleen A. Felton (argued)
U.S. Department of Justice
Appellate Section, Criminal Division
P.O. Box 899
Ben Franklin Station
Washington, DC  20044

COUNSEL FOR APPELLEE
UNITED STATES OF AMERICA

Edward W. Warren (argued)
Kirkland & Ellis
655 15th Street, N.W.
Suite 1200
Washington, DC  20005

COUNSEL FOR AMICI CURIAE
234 MEMBERS OF CONGRESS

Michael A. Bamberger (argued)
Sonnenschein, Nath & Rosenthal
1221 Avenue of the Americas, 24th Floor
New York, NY  10020-1089

COUNSEL FOR AMICI CURIAE
AMERICAN BOOKSELLERS FOUNDATION FOR FREE
EXPRESSION; COUNCIL FOR PERIODICAL DISTRIBUTORS
ASSOCIATIONS; NATIONAL ASSOCIATION OF ARTISTS'
ORGANIZATIONS; PERIODICAL AND BOOK ASSOCIATION
OF AMERICA, INC.; APERTURE FOUNDATION, INC.;
FREEDOM TO READ FOUNDATION; MAGAZINE PUBLISHERS
OF AMERICA; AMERICAN CIVIL LIBERTIES UNION; LAW
& HUMANITIES INSTITUTE

H. Robert Showers
National Law Center for Children and Families
3975 University Drive, Suite 320
Fairfax, VA  22030

COUNSEL FOR AMICI CURIAE
NATIONAL LAW CENTER FOR CHILDREN AND FAMILIES;
THE NATIONAL PARENT TEACHER ASSOCIATION; NATIONAL
COALITION AGAINST PORNOGRAPHY; "ENOUGH IS
ENOUGH!"; CHILDHELP USA; CHILD WELFARE LEAGUE OF
AMERICA; NATIONAL CENTER FOR MISSING AND
EXPLOITED CHILDREN; AMERICAN COALITION FOR ABUSE
AWARENESS; NATIONAL COUNCIL OF CATHOLIC WOMEN;

2

JUSTICE FOR CHILDREN; ALLIANCE FOR THE RIGHTS OF
CHILDREN; WOMEN AGAINST PORNOGRAPHY; LUTHERAN
CHURCH MISSOURI SYNOD; CHRISTIAN COALITION; FOCUS
ON THE FAMILY; FAMILY VIOLENCE & SEXUAL ASSAULT
INSTITUTE; FAMILY RESEARCH COUNCIL, INC.; NATIONAL
CENTER FOR REDRESS OF INCEST AND SEXUAL ABUSE;
RABBINICAL ALLIANCE OF AMERICA; CHRISTIAN LIFE
COMMISSION OF THE SOUTHERN BAPTIST CONVENTION;
CHRISTIAN ACTION NETWORK; HELP US REGAIN THE
CHILDREN; FREE CONGRESS RESEARCH AND EDUCATION
FOUNDATION; COALITIONS FOR AMERICA; SAVE AMERICA'S
YOUTH, INC.; CITIZENS AGAINST PORNOGRAPHY;
PENNSYLVANIA CHRISTIAN COALITION; TRADITIONAL
VALUES COALITION; CHRISTIAN LEGAL DEFENSE AND
EDUCATION FOUNDATION; EAGLE FORUM; CHILD
PROTECTION LOBBY; VOICES FOR VICTIMS; VOICES IN
ACTION, INC.

Ronald D. Ray
1012 South Fourth Street
Louisville, KY  40203

    COUNSEL FOR AMICUS CURIAE
    THE INSTITUTE FOR MEDIA EDUCATION

James P. Mueller
National Family Legal Foundation
5353 North 16th Street, Suite 400
Phoenix, AZ  85016

    COUNSEL FOR AMICI CURIAE
    NATIONAL FAMILY LEGAL FOUNDATION; MORALITY
    IN MEDIA, INC.

---

**OPINION OF THE COURT**

---

COWEN, <u>Circuit Judge</u>.

The principal question presented by this appeal is whether videotapes that focus on the genitalia and pubic area of minor females constitute a "lascivious exhibition of the genitals

or pubic area" under the federal child pornography laws, 18 U.S.C. §§ 2252(a)(2), (4) and 2256(2)(E) (1988 & Supp. IV 1992), even though these body parts are covered by clothing. When this case first came before us, we held that such visual depictions do qualify as lascivious exhibitions and that this interpretation does not render the statute unconstitutionally overbroad. United States v. Knox, 977 F.2d 815, 820-23 (3d Cir. 1992), vacated and remanded, __ U.S. __, 114 S. Ct. 375 (1993).

At the Supreme Court's instruction, we have further considered this case "in light of the position asserted by the Solicitor General in his brief for the United States," Knox v. United States, __ U.S. __, 114 S. Ct. 375 (1993). In that brief and in its subsequent brief filed in this court after the Supreme Court remand, the government argues that the plain language of the statute requires the genitals or pubic area exhibited to be at least somewhat visible or discernible through the child's clothing. We hold that the federal child pornography statute, on its face, contains no nudity or discernibility requirement, that non-nude visual depictions, such as the ones contained in this record, can qualify as lascivious exhibitions, and that this construction does not render the statute unconstitutionally overbroad. Finally, we again conclude that the government presented sufficient evidence at the bench trial to establish both the necessary mens rea and the delivery of the films through interstate mail. We thus will reaffirm Knox's conviction.

I.

4

In March of 1991, the U.S. Customs International Branch intercepted a mailing to France which contained a request that two videos, "Little Girl Bottoms (Underside)" and "Little Blondes," be sent to J. Richard Scott, 210 West Hamilton Avenue, No. 108, State College, Pennsylvania. The parcel also contained a check drawn on the account of defendant Stephen A. Knox and bearing his signature. The check listed his address as 210 East Hamilton Avenue, No. 25, State College, Pennsylvania. A second envelope addressed to J. Richard Scott from the Netherlands also was confiscated and contained a catalog advertising for sale videotapes depicting nude, semi-clothed, and clothed minors. Aware that Knox previously had been convicted of receiving child pornography through the mail, the customs investigators obtained a search warrant and with the assistance of the Pennsylvania State Police searched his apartment.[0]

The police officers seized three video cassettes produced by the Nather Company (hereafter "Nather Tapes"), a videotape distribution company based in Las Vegas, Nevada. A catalogue from the Nather Company with checkmarks next to several video selections was also removed from Knox's apartment. One of the marked videos in the brochure corresponded to a segment of a compilation tape which was seized. Envelopes addressed to Nather and Nather mail order forms were discovered as well as a carbon

---

[0]The district court determined that the search of Knox's apartment did not violate the Fourth Amendment, and Knox does not contest this decision on appeal.

5

copy of a money order payable to Nather Company for an amount approximately equal to the price of a single video.

The tapes contained numerous vignettes of teenage and preteen females, between the ages of ten and seventeen, striking provocative poses for the camera. The children were obviously being directed by someone off-camera. All of the children wore bikini bathing suits, leotards, underwear, or other abbreviated attire while they were being filmed. The government conceded that no child in the films was nude, and that the genitalia and pubic areas of the young girls were always concealed by an abbreviated article of clothing. The photographer would zoom in on the children's pubic and genital area and display a close-up view for an extended period of time. Most of the videotapes were set to music. In some sequences, the child subjects were dancing or gyrating in a fashion not natural for their age. The films themselves and the promotional brochures distributed by Nather demonstrate that the videotapes clearly were designed to pander to pedophiles.

The United States prosecuted Knox based exclusively on the three Nather tapes. Knox was indicted on two counts: (1) knowingly receiving through the mail visual depictions of a minor engaged in sexually explicit conduct; and (2) knowingly possessing three or more videotapes that contain a visual depiction of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) and (4). "Sexually explicit conduct" for both of these offenses is defined to include a

6

"lascivious exhibition of the genitals or pubic area."  Id.
§2256(2)(E).

Pursuant to Federal Rule of Criminal Procedure 12(b),
Knox filed a pre-trial motion to dismiss the indictment
contending that the videos did not contain an "exhibition" of the
genitals or pubic area since these areas were always covered by
underwear, leotards, or a bathing suit.  Knox and the government
agreed to a pre-trial hearing to determine whether the indictment
was facially sufficient.  The district judge viewed portions of
the Nather tapes which the parties stipulated were representative
of the material contained in the videos.  To determine the
meaning of the statutory language "exhibition of the . . . pubic
area," the district court looked to the plain meaning of the
words.  Since the pubic area is located directly adjacent to the
genitalia, the district court concluded that other areas in close
proximity to the genitals, specifically the "uppermost portion of
the inner thigh," were also included in the statutory definition
of the pubic area.  District Court Memorandum at 14; App. at 41.
Since the upper portion of the inner thigh was clearly exposed,
the court held that the tapes contained an exhibition of the
pubic area, and therefore denied Knox's motion to dismiss the
indictment.

Knox waived his right to a jury trial and a bench trial
was held.  At the bench trial, all of the exhibits and testimony
from the pre-trial hearing were incorporated into the record for
purposes of the trial.  Additionally, the government admitted
into evidence advertising catalogues from Nather, Nather mail

order forms, and envelopes addressed to the Nather Company which were seized from Knox's apartment.  The catalogues described in detail the contents and intended effect of the films that could be purchased:

> "Sassy Sylphs" will blow your mind so completely you'll be begging for mercy.
> Just look at what we have in this incredible tape: about 14 girls between the ages of 11 and 17 showing so much panty and ass you'll get dizzy.  There are panties showing under shorts and under dresses and skirts; there are boobs galore and T-back (thong) bathing suits on girls as young as 15 that are so revealing it's almost like seeing them naked (some say even better).

District Court Memorandum at 11; App. at 38.

The government also introduced evidence to establish that Nather mailed the tapes from its office in Nevada to the mailbox which Knox had rented under a fictitious name.  Finally, the carbon copy of a sixty-two dollar money order payable to Nather was admitted to prove the method of payment.  Although Knox did not testify and called no defense witnesses, he introduced magazine advertisements for Nather's videotapes which claimed that the absence of complete nudity rendered the tapes legal to purchase and possess.

The district court found Knox guilty on both counts. Thereafter, on February 13, 1992, Knox filed a motion for a judgment of acquittal or, alternatively, as he styled it, an application for a hearing to explore the anatomical issue decided by the court, predicated upon the contention that the uppermost portion of the inner thigh is not the pubic area.  In conjunction with this motion, Knox submitted the affidavit of Dr. Todd Olsen,

8

Director of Human Gross Anatomy at the Albert Einstein College of Medicine. The affidavit of Dr. Olsen stated that defining the pubic area to encompass the uppermost portion of the inner thigh is anatomically incorrect. Since the motion was filed three months after entry of the verdict, the district court denied the motion as untimely. Knox was sentenced to the minimum mandatory term of imprisonment of five years for each count, to be served concurrently. The sentence has been stayed pending the outcome of this appeal.

Knox appealed the denial of the motion to dismiss the indictment, the guilty verdict, and the denial of the post-trial motion for judgment of acquittal.[0] We upheld Knox's conviction. In doing so, we interpreted the statutory phrase "exhibition of the genitals or pubic area" as encompassing the lascivious focus on these body parts even though they were always covered by underwear, leotards, or other thin but opaque clothing. United

---

[0]In our prior consideration of this case, we addressed as a preliminary matter whether we had jurisdiction to review the issues presented in Knox's untimely post-trial motion for a judgment of acquittal. See United States v. Knox, 977 F.2d 815, 818-19 (3d Cir. 1992) (Part II), vacated and remanded, __ U.S. __, 114 S. Ct. 375 (1993). We decided not to address the merits of the motion because we concluded that the district court had not abused its discretion in declining to entertain it in the first instance. Id. at 819. We next addressed whether a nude display of the uppermost portion a minor subject's inner thighs can be a lascivious exhibition of the pubic area. Id. at 819-20 (Part III). We concluded that it could not because this portion of the human anatomy is not part of the pubic area as defined in the most widely accepted human anatomy treatises. Id. at 819. Because neither Knox nor the government, nor any of the various amici parties, have argued that those conclusions are erroneous, we need not address them in this opinion other than to say that we adhere to the analysis and conclusions set forth in our prior opinion which was vacated by the Supreme Court.

States v. Knox, 977 F.2d 815, 820-23 (3d Cir. 1992), vacated and remanded, __ U.S. __, 114 S. Ct. 375 (1993).  We are the first, and to date only,[0] court which has interpreted the statute to allow for a conviction under these circumstances.

II.

After we affirmed his conviction, Knox successfully petitioned the U.S. Supreme Court for certiorari.  See Knox v. United States, __ U.S. __, 113 S. Ct. 2926 (1993).  In his petition for certiorari, Knox presented four issues, most of which focus on whether there can be an "exhibition of the genitals or pubic area" under 18 U.S.C. § 2256(2)(E) where the genitals and pubic area are fully covered by an article of clothing.[0]  In its brief opposing the grant of certiorari, the

_____

[0]According to several of the briefs submitted to this court, Knox's prosecution is the only one that has been brought by the government where the criminal materials at issue do not contain any nudity at all.  The government did not dispute this contention in its brief or at oral argument after remand from the Supreme Court.  Thus, for purposes of this appeal we will assume that the contention is true.  Of course, we recognize that a prosecutor always has broad discretion to decide the circumstances that warrant prosecution of a person for what the prosecutor fairly believes is unlawful conduct.  When the prosecutor decides to prosecute, however, it is the exclusive function of the judiciary to determine whether the conduct charged is unlawful unless the prosecutor then withdraws the prosecution.

[0]The four questions presented by Knox in his petition for certiorari are the following:

> 1) Whether there can be an "exhibition of the genitals or pubic area" under 18 U.S.C. § 2256(2)(E) where the genitals and pubic area are fully covered by an article of clothing.
> 2) Where no other prosecution has ever been brought and no other arrest has ever been made charging an

10

government supported the theory we adopted in upholding Knox's conviction.  After the grant of certiorari, and the change in administration following President Clinton's election, the government took a different position.

The government's new position is that while complete nudity is not absolutely required for a depiction to constitute a criminal "exhibition," this court "erred in holding that simply focusing on the midsection of a clothed body may constitute an 'exhibition' of the unrevealed body parts beneath the garments." Gov't Sup. Ct. Brief (Sept. 1993) at 10.  In the government's view, a criminal "exhibition" requires both that the visual depiction focus in on the body parts and that it render them visible or discernible in some fashion.  Id.

Reviewing the legislative history, the government noted that the Justice Department in 1977 had made a suggestion to

_____

exhibition of the genitals which were fully covered by an article of clothing, and the defendant knew that the videotape contained no nudity and was told that the videotape was therefore legal, did the government introduce sufficient proof of scienter to support a guilty verdict?
3) Where no other prosecution has ever been brought and no other arrest has ever been made charging an exhibition of the genitals which were fully covered by an article of clothing, is an objectively reasonable good faith belief in the legality of the depiction a valid affirmative defense?
4) Assuming arguendo that there can be an "exhibition of the genitals or pubic area" under 18 U.S.C. §2256(2)(E) where the genitals and pubic area are fully covered by clothing, is 18 U.S.C. § 2256(2)(E) unconstitutionally vague and overbroad?

Knox's Petition for a Writ of Certiorari (Sup. Ct. No. 92-1183, October Term, 1992) at (i).

11

substitute the phrase "lewd exhibition of the genitals or pubic area" for a more vague phrase in order to more clearly delineate "what types of nude portrayals of children were intended to be encompassed" within the statute.  Id. at 11 (quoting Protection of Children Against Sexual Exploitation: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of the Senate Comm. on the Judiciary, 95th Cong., 1st Sess. 77-78 (1977), reprinted in 1978 U.S.S.C.A.N. 63 (letter from Patricia M. Wald, Assistant Attorney General to James O. Eastland, Chairman, Committee of the Judiciary)) (emphasis added by government).  The government reads this legislative history as an indication that Congress only intended to criminalize depictions that are at least partly nude in nature.  In our prior opinion, we distinguished this legislative history by noting that the language of the Wald letter assumed that Congress only intended to criminalize nude depictions because the language of the bill at that time contained the word "nudity."

As to the scope of nudity required, the government did not go so far as to agree with Knox that complete nudity is required.  Rather, the government asserted that Congress intended to criminalize depictions of genitals that are at least somewhat visible.  Id. at 11-12.  Thus, the government stated that a child's genitals which are covered by a transparent or nearly transparent garment, or clothing that is so tight as to reveal completely the contours of the genitals, would constitute a criminal "exhibition" within the meaning of the statute.  Id. at

12

12.[0] Ultimately, the government believes that the child's genitals or pubic area must be "discernible" through his or her tight clothing in order for the exhibition to be child pornography under 18 U.S.C. § 2256(2)(E).

The government put forth a second reason why our prior opinion could not be fully supported. Relying on the introductory statutory language which states that § 2252(a) covers only depictions involving "the use of a minor engaging in sexually explicit conduct," 18 U.S.C. § 2252(a) (emphasis added), the government concluded that a criminal "exhibition" exists only where "the minors who appear in the videotapes can be said to have been acting or posing lasciviously." Gov't Sup. Ct. Brief (Sept. 1993) at 13. Thus, according to the government's position, the appropriate inquiry is on whether the child lasciviously poses her (or someone else's) genitals or pubic area. See id. Because neither this court nor the district court interpreted the statute in this fashion, the government requested that the Supreme Court vacate the judgment and remand for reconsideration in light of the "correct" statutory standard.

The government also addressed two related issues in its Supreme Court brief. First, it argued that adoption of the advocated statutory standard would not render the statute unconstitutionally vague or overbroad. Id. 14-17.[0] Finally, the

---

[0] The government acknowledged that the adoption of such a standard would be more easily applied to depictions of boys than girls because of obvious anatomical differences. Id. at 12 n.3.
[0] We rejected Knox's arguments concerning overbreadth in our prior opinion by finding the term "lascivious" as the limiting principle. See Knox, 977 F.2d at 823.

government supported that part of our prior opinion which rejected Knox's argument that he did not possess the necessary mens rea to violate the child pornography statute because he did not know the illegal nature of the contents of the videos, and because he relied on disclaimers which accompanied the videotapes from their commercial source. Id. at 17-20; see also Knox, 977 F.2d at 824-25.

In the final section of its Supreme Court brief, the government stated that the videotapes at issue in this case might be deemed unlawful under the statutory standard advocated in its brief. Because we did not interpret the statute consistently with the government's new position, the government requested that the case "be remanded so that the Court of Appeals can assess the sufficiency of the evidence under the proper legal standard." Gov't Sup. Ct. Brief (Sept. 1993) at 20. The government clarified that the only task necessary on remand was for this court "simply to determine whether the evidence was sufficient, under the correct legal standard, to support a general verdict of guilty." Id. at 23.

Upon the close of briefing in the Supreme Court, but before the case was argued, the Court vacated the judgment and remanded. See Knox v. United States, __ U.S. __, 114 S. Ct. 375 (1993). The Supreme Court's mandate states the following: "The judgment is vacated and the case is remanded to the United States Court of Appeals for the Third Circuit for further consideration in light of the position asserted by the Solicitor General in his brief for the United States filed September 17, 1993." Id. Our

14

charge on remand is to further consider our interpretation of the statute in light of the interpretation advanced by the government in its brief to the Supreme Court.[0]

## III.

Before turning to the merits of the case, we must address one procedural issue. After the Supreme Court vacated the judgment and remanded the case for further consideration, on December 23, 1993 the government filed a Motion to (further) Remand the case to the district court. This motion was made during the new briefing schedule established by us on November 17, 1993. The government's motion sought an immediate remand for the purpose of a retrial in the district court to be conducted according to the interpretation of § 2256(2)(E) advocated by the government.

In its motion, the government stated that at the new trial, if granted, it intends to introduce evidence which was not offered at the original trial pursuant to an agreement between Knox and the government whereby the defense agreed to a bench trial in return for use at trial of only certain specified videotapes (i.e., the three Nather tapes). The government

---

[0]After the Supreme Court remanded the case, we granted amicus curiae status to five interested parties, all of which have submitted briefs in this court. Four of the amici parties urge us to reaffirm Knox's conviction on the theory adopted in our prior opinion: 234 Members of Congress; The Institute for Media Education; National Law Center for Children and Families et al.; and National Family Legal Foundation and Morality in Media. The final amicus party, American Booksellers Foundation for Free Expression et al., supports Knox and argues that he should be acquitted of the child pornography charges.

15

requested a suspension of the briefing schedule and an immediate remand to the district court. We entered an order denying the government's request for an immediate remand and a suspension of the briefing schedule; we did, however, inform the parties that we would further consider the merits of the government's motion following the briefing schedule and oral argument.

Other than the arguments made in the December 23, 1993 Motion to Remand, the government has not further briefed this issue. In its brief on the merits, however, the government renews its request that we remand the case to the district court for a new trial. Gov't Brief (March 1994) at 28.

The government argues that a remand is in order because it has espoused a standard for interpreting the child pornography statute that was not used by this court in reviewing the conviction, and that was not used by the district court at trial. Thus, the government believes that Knox should be retried according to the standard urged by the government. According to the government, a retrial would require factual determinations concerning the evidence which would be inappropriate for this court to make, specifically factual findings as to whether any of the depictions in the videos reveal pubic areas or genitalia which are discernible through the opaque clothing. For this reason, as well as others, the government seeks a remand to the district court for a new trial.

In its Motion to Remand, the government also noted that in his reply brief filed in the Supreme Court, Knox requested a remand to the district court in the event the Supreme Court

16

agreed with the government concerning the newly proposed interpretation of the child pornography statute. As noted previously, the government admitted in its motion that if we agree to a remand, it will seek to introduce different evidence at trial. The government argues that this is still the appropriate course for the case at this juncture given that this court will have a full opportunity to review the district court's application of the proposed statutory standard in the event that Knox is convicted again.

Following the remand from the Supreme Court, Knox now opposes the government's motion to remand the case. First, Knox argues that a remand for a new trial arguably would run directly contrary to the Supreme Court's mandate for us to reconsider our previous opinion "in light of the position asserted by the Solicitor General," Knox, __ U.S. __, 114 S. Ct. 375.[0] Knox also argues that the government's new position raises an ambiguity concerning the statute to which the rule of lenity must be applied. Although Knox has not fully briefed this argument, he contends that jeopardy has attached and that appellate review of the trial record might result in his acquittal as a matter of law. Thus, Knox argues that a remand for the purpose of giving the government a second bite at the evidentiary apple would be

---

[0]Knox, noting that the case has created a political firestorm, therefore believes that the government wishes to avoid criticism by using additional evidence to gain a conviction in a new trial because the existing record does not contain sufficient evidence to uphold the conviction under the "discernible genitals" standard proposed by the government. We express no opinion concerning this contention.

17

constitutionally inappropriate as a violation of the Double Jeopardy Clause of the Fifth Amendment.

Amici curiae parties, including the amici Members of Congress, also filed answers in opposition to the government's motion for remand. The amici parties make several arguments as to why granting the motion would be inappropriate. Essentially, they argue that a remand would arguably violate the Supreme Court's mandate, that the only disputed issue is legal in nature and should be decided by this court, and that Supreme Court precedent does not support the view that if at some time during the proceeding both parties seek a remand to the district court, that an appellate court must adhere to that request.

We will deny the government's Motion to Remand because we believe that an immediate remand to the district court for purposes of conducting a retrial without first deciding the legal issue before us would violate the Supreme Court's mandate to this court. The Supreme Court vacated our judgment and remanded the case to us, not the district court, "for further consideration in light of the position asserted by the Solicitor General in his brief for the United States." Knox v. United States, __ U.S. __, 114 S. Ct. 375 (1993).

In the government's Supreme Court brief, the Solicitor General merely argued that the interpretation of the child pornography statute adopted in our prior opinion was legally incorrect. The government advocated the adoption of a different statutory standard, one that requires the contours of the genitalia or pubic area to be discernible through the opaque

18

clothing in order for possession of the material to be criminal. By remanding the case to this court for further consideration in the first instance, the Supreme Court declined to address the purely legal question presented.

Although the government's Supreme Court brief did at one point request a remand to this court or the district court, it did so only for the purpose of applying the legal standard newly espoused by the government.[0] The government never argued in its Supreme Court brief that the case ought to be remanded to the district court in order for the prosecution to introduce additional evidence which, if admitted, might moot the entire statutory interpretation issue which confronted the Supreme Court

---

[0]The government's Supreme Court brief refers to or advocates a remand in five different places. See Gov't Sup. Ct. Brief (Sept. 1993) at 9-10, 13, 20, and 23 (both in Part IV and Conclusion). At only one point in the brief did the government mention a remand to the district court. See id. at 20. There, the government stated: "[I]f the Court agrees that an incorrect construction of the statutory phrase was used below, the appropriate disposition is to remand the case to the court of appeals for application either by that court or the district court of the correct standard to the facts of this case." Id. (emphasis added). Thus, even where the brief did mention the district court, it did so only for the purpose of indicating that the appropriate trier of fact should apply the law once it has been adopted or clarified by this court (the court of appeals). Even here the government's Supreme Court brief advocated a remand to this court for reconsideration of the purely legal issue of statutory interpretation. At no point did the government's Supreme Court brief mention the possibility of introducing new evidence at trial if it were to be remanded to the district court. Finally, in the Conclusion section of its brief, the government explicitly requested "a remand to the court of appeals for further proceedings," not to the district court for a new trial. See id. at 23. Given that the government sought a remand to this court by the Supreme Court, the Court's simply worded mandate that this court further consider our statutory interpretation makes perfect sense.

and now confronts this court on remand. But that is just the course the government now advocates with its Motion to Remand.

If we were to agree to an immediate remand to the district court for the purpose of holding a retrial with additional evidence, we would be disposing of the case in a manner that was not presented to or contemplated by the Supreme Court. Given that the Supreme Court did not consider the government's requested disposition as an option, it ordered us to further consider our prior interpretation of the child pornography statute in light of the newly advanced standard espoused by the government. If we fail to address the legal issue directly presented by the Solicitor General's brief and the Supreme Court mandate, then arguably we will be ignoring simple instructions from our higher authority. Furthermore, in light of our disposition upholding Knox's conviction after further consideration, the issue of a remand to the district court for a new trial is moot.

Finally, it is important to address another aspect of the government's Motion to Remand. In several instances the government argues that a remand to the district court is exactly the remedy Knox sought in the Supreme Court in the event that the Court agreed that we had adopted the wrong statutory standard. However, Knox requested this disposition only in the Supreme Court, not in this court, and only before the government proposed a remand to the district court for the purpose of introducing additional evidence during the retrial.

Knox sought a remand to the district court for a new trial only if the Supreme Court adopted the government's "discernible genitals" statutory standard, because in Knox's view the record evidence does not support a conviction even under that standard. Therefore, the government's position that the case should be immediately remanded to the district court for a new trial using additional evidence is not advanced in any fashion by the fact that Knox sought a remand from the Supreme Court before the government revealed it would attempt to introduce different evidence in the event a new trial was granted. It is logical for a convicted criminal defendant to seek the alternative remedy of a remand for a new trial in the event an appellate court does not agree that the conviction cannot stand because the evidence was insufficient to convict. In this case, however, the Supreme Court did not address the legal issue, instead leaving it for us to address in the first instance.

Under these circumstances, Knox now opposes a remand to the district court for a new trial using additional evidence and it is not relevant that in the Supreme Court Knox requested a remand to the district court as an alternative remedy to that of an outright acquittal for insufficiency of evidence. See, e.g., Garcia v. United States, 469 U.S. 70, 79, 105 S. Ct. 479, 484 (1984) ("[P]rivate agreements between litigants, especially those disowned, cannot relieve this Court of performance of its judicial function. It is our responsibility to interpret the intent of Congress . . . irrespective of petitioners' or respondent's prior or present views."). Since we will deny the

21

government's Motion to Remand because granting it would violate the Supreme Court's mandate, we need not address whether adopting such a course would implicate double jeopardy concerns.

## IV.

We now turn to the merits of the case on remand. The Protection of Children Against Sexual Exploitation Act of 1977, as subsequently amended, criminalizes knowingly receiving through the mail visual depictions of a minor engaged in sexually explicit conduct and knowingly possessing three or more videotapes which contain a visual depiction of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2252(a)(2), (4). "Sexually explicit conduct" for purposes of both of these offenses is defined to include the "lascivious exhibition of the genitals or pubic area." Id. § 2256(2)(E). In our prior opinion, we held that the statute contains no nudity requirement because the above quoted statutory phrase refers to a "lascivious exhibition," not a nude or naked exhibition. Knox, 977 F.2d at 820. Our review of the relevant legislative history revealed that Knox had not met his burden of demonstrating that Congress clearly intended the statute only to proscribe nude or partially nude displays of the genitals or pubic area. Id. at 820-21. Because the meaning of the statutory phrase "lascivious exhibition" under 18 U.S.C. § 2256(2)(E) poses a pure question of law, our review is plenary. United States v. Brown, 862 F.2d 1033, 1036 (3d Cir. 1988).

22

Defendant Knox continues to assert that the genitals or pubic area must be unclad or nude, and fully exposed to the camera, before an exhibition may occur. Several amici parties, including the amici Members of Congress, support our prior statutory interpretation that no nudity is required. The government contends that the pictorial representation of the genitals or pubic area, covered only by underwear, a bikini bathing suit, a leotard, or other abbreviated attire, constitutes a lascivious exhibition if (1) those body parts are at least somewhat visible in the videotapes, and (2) the minors were engaged in conduct that can be judged "lascivious."

When interpreting a statute, the starting point is always the language of the statute itself. American Tobacco Co. v. Patterson, 456 U.S. 63, 68, 102 S. Ct. 1534, 1537 (1982). Courts presume that Congress expressed its legislative intent through the ordinary meaning of the words it chose to use, Richards v. United States, 369 U.S. 1, 9, 82 S. Ct. 585, 591 (1962); Perrin v. United States, 444 U.S. 37, 42, 100 S. Ct. 311, 314 (1979), and if the statutory language is clear, it is not necessary to glean congressional intent from legislative history, TVA v. Hill, 437 U.S. 153, 184 n.29, 98 S. Ct. 2279, 2296 n.29 (1978); Barnes v. Cohen, 749 F.2d 1009, 1013 (3d Cir. 1984), cert. denied, 471 U.S. 1061, 105 S. Ct. 2126 (1985). Thus, it is axiomatic that when the statutory language is clear, the words must be interpreted in accordance with their ordinary meaning. Dewalt v. Sullivan, 963 F.2d 27, 30 (3d Cir. 1992). Only the most extraordinary showing of contrary congressional intent may

23

justify altering the plain meaning of a statutory term.  Malloy v. Eichler, 860 F.2d 1179, 1183 (3d Cir. 1988).

Knox attempts to read a nudity requirement into a statute which has none.  The amended Protection of Children Against Sexual Exploitation Act criminalizes the "lascivious exhibition of the genitals or pubic area."  18 U.S.C. §2256(2)(E).  In ordinary legal usage, the word "exhibit" means "[t]o show or display; to offer or present for inspection." Black's Law Dictionary 573 (6th ed. 1990).  The genitals or pubic area need not be fully or partially nude in order to be shown or put on display.  This plain meaning of the term "exhibition" is confirmed by reference to a popular dictionary of the English language, which defines "exhibit" as "[t]o display; as:  a. [t]o present for consideration; set forth . . . .  b. [t]o present to view; to show, esp. in order to attract notice to what is interesting or instructive," Webster's New International Dictionary 893 (2d ed. 1959).

Despite our understanding that the ordinary meaning of the term "exhibition" does not require nudity, the government urges us to adopt an intermediate statutory standard which requires that the depiction in question render the minor's genitals or pubic area visible or discernible in some fashion in order to constitute an exhibition.  The government attempts to provide support for its "discernible genitals" standard from the plain meaning of the statutory terms and from the legislative history.  First, the government argues that the ordinary meaning of the term "exhibition," as used in the statute, contemplates

24

that the genitals or pubic area of the minors depicted must be visible or discernible in some fashion.  Absent some visibility or discernibility of the genitals or pubic area, the government in effect agrees with Knox that the depiction is an exhibition of the clothing covering the body parts, rather than an exhibition of the body parts themselves.

In support of this reading of the statute, Knox makes reference to an analogy between the depictions contained in the Nather tapes and an art exhibition.  He argues that a celebrated piece of sculpture such as Michelangelo's David would not be exhibited or on display at all if there was an opaque dropcloth covering the sculpture from head to toe.  The government in essence agrees, although it concedes that there would be an exhibition of the sculpture if the David's prominent features were discernible or otherwise visible through the dropcloth.

We disagree with this reasoning because we believe that the analogy entirely misses the mark.  It may well be that if a work of art is completely covered, any and all of its meaning and value to an observer is lost.  That is, any and all of the magnificent qualities which one seeks from viewing the David are destroyed by completely covering the statue.  In this sense, the completely covered work of art is not being exhibited.  In contrast, it is not true that by scantily and barely covering the genitals of young girls that the display of the young girls in seductive poses destroys the value of the poses to the viewer of child pornography.  Although the genitals are covered, the display and focus on the young girls' genitals or pubic area

25

apparently still provides considerable interest and excitement for the pedophile observer, or else there would not be a market for the tapes in question in this case. Thus, the scantily clad genitals or pubic area of young girls can be "exhibited" in the ordinary sense of that word, and in fact were exhibited in the tapes which are the subject of Knox's conviction. The analogy made by Knox and the government to exhibitions of covered works of art fails on its own terms.

In any event, we are not called on in this case to interpret the imaginary statutory phrase "art exhibition." Rather, we are called upon to decipher Congress' intent concerning the statutory phrase "lascivious exhibition of the genitals or pubic area" as used in the federal child pornography statute, 18 U.S.C. § 2256(2)(E). Thus, we must focus not on what would or would not constitute an art exhibition, but rather on whether the ordinary meaning of the term "lascivious exhibition" includes the fully covered genitals or pubic area of minor children.

In pursuing this task, we believe the principle that "[w]ords take on meaning in the company of other words," St. Surin v. Virgin Islands Daily News, Inc., No. 93-7553, slip op. at 13 (3d Cir. Apr. 15, 1994), is relevant when interpreting terms contained in a statute which Congress passed to curb a particular evil. See Deal v. United States, __ U.S. __, __, 113 S. Ct. 1993, 1996 (1993) (it is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be

26

drawn from the context in which it is used").  As discussed more fully below, Congress aimed the federal child pornography statute at combatting "the use of children as subjects of pornographic materials[, which] is harmful to the physiological, emotional, and mental health of the child."  New York v. Ferber, 458 U.S. 747, 758, 102 S. Ct. 3348, 3355 (1982); see also id. at 758 n.9, 102 S. Ct. at 3355 n.9.  In so doing, Congress defined the "lascivious exhibition of genitals or pubic area" as one variety of "sexually explicit conduct" proscribed by the statute.  Thus, we find it more meaningful to focus on the ordinary meaning of the statutory term "lascivious exhibition," rather than simply focusing on the term "exhibition" divorced entirely from the context in which it was used.

The term "lascivious" is defined as "[t]ending to excite lust; lewd; indecent; obscene; sexual impurity; tending to deprave the morals in respect to sexual relations; licentious." Black's Law Dictionary 882 (6th ed. 1990).  Hence, as used in the child pornography statute, the ordinary meaning of the phrase "lascivious exhibition" means a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer.  Such a definition does not contain any requirement of nudity, and accords with the multi-factor test announced in United States v. Dost[0] for determining

---

[0]636 F. Supp. 828 (S.D. Cal. 1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856, 108 S. Ct. 164 (1987). The Dost factors were articulated in order to provide a more concrete test for determining whether a visual

27

whether certain material falls within the definition of 18 U.S.C. § 2256(E)(2). Nor does such a definition contain or suggest a requirement that the contours of the genitals or pubic area be discernible or otherwise visible through the child subject's clothing.

The genitals and pubic area of the young girls in the Nather tapes were certainly "on display" as the camera focused for prolonged time intervals on close-up views of these body

---

depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area" under 18 U.S.C. § 2256(2)(E):

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> 4) whether the child is fully or partially clothed, or nude;
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

636 F. Supp. at 832. The court readily admitted that this list is not exhaustive as other factors may be relevant in particular cases. Id.

We formally adopted the Dost factors as the relevant test for determining lasciviousness in United States v. Villard, 885 F.2d 117, 122 (3d Cir. 1989). The analysis is qualitative and no single factor is dispositive. Id. Other federal courts have also relied on the Dost factors for this purpose. See United States v. Arvin, 900 F.2d 1385, 1390-91 & n.4 (9th Cir. 1990), cert. denied, 498 U.S. 1024, 111 S. Ct. 672 (1991); United States v. Wolf, 890 F.2d 241, 244-46 (10th Cir. 1989); United States v. Rubio, 834 F.2d 442, 448 (5th Cir. 1987) (discussing the six Dost factors without citing to the Dost case); United States v. Nolan, 818 F.2d 1015, 1019 n.5 (1st Cir. 1987); United States v. Mr. A., 756 F. Supp. 326, 328-29 (E.D. Mich. 1991).

parts through their thin but opaque clothing.  Additionally, the obvious purpose and inevitable effect of the videotape was to "attract notice" specifically to the genitalia and pubic area. Applying the plain meaning of the term "lascivious exhibition" leads to the conclusion that nudity or discernibility are not prerequisites for the occurrence of an exhibition within the meaning of the federal child pornography statute.[0]

Our task of further examining the statutory language in light of the Solicitor General's position also requires us to address whether in our prior opinion we overlooked a requirement that the minor subjects be engaged in conduct that can be judged "lascivious."  According to the government, this interpretation of the statute is made necessary by the statutory language of 18 U.S.C. § 2252(a)(2)(A) and (a)(4)(B)(i), which criminalize the possession of material depicting "the use of a minor engaging in sexually explicit conduct."  Id. (emphasis added).  Since "sexually explicit conduct" is defined to include "actual or simulated lascivious exhibition of the genitals or pubic area of any person," id. § 2256(2)(E), the government concludes that depictions "come within the statute only if they show minors engaged in the conduct of lasciviously exhibiting their (or

---

[0]We note that were we to agree with the government that the correct statutory standard requires the minor subject's genitals or pubic area to be discernible through his or her clothing, we would have no trouble upholding Knox's conviction.  We have viewed the Nather tapes.  In several sequences, the photographer has focused unnaturally on the genitals of the young girls in close-up shots which reveal the outer contours of the genitals through their tight bathing suits, leotards, or underwear.

someone else's) genitals or pubic areas."  Gov't Sup. Ct. Brief (Sept. 1993) at 13.

In its brief after remand, the government recedes somewhat from the view implied by its Supreme Court brief that the depiction must show the child subject to have some lascivious intent.  The government now argues only that the material must depict some conduct by the child subject, which includes a "lascivious exhibition of the genitals or pubic area," and which appeals to the lascivious interest of some potential audience.  Although the government maintains that we did not address this aspect of the statute, and that a complete statutory interpretation should include this element, it argues that "the tapes in this case easily meet that requirement of the statute." Gov't Brief (March 1994) at 15.

The government is correct that in our prior opinion we did not specifically address this aspect of the statute.  We did not do so because neither Knox nor the government presented for review or argued this aspect of the statute as something the court needed to address in order to decide the case.  Upon consideration of the meaning of this statutory language, we reject any contention, whether implied by the government or not, that the child subject must be shown to have engaged in sexually explicit conduct with a lascivious intent.

In United States v. Wiegand, 812 F.2d 1239, 1244-45 (9th Cir.), cert. denied, 484 U.S. 856, 108 S. Ct. 164 (1987), the Court of Appeals for the Ninth Circuit addressed this very question.  The court stated:

30

In the context of the statute applied to the conduct of children, lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like-minded pedophiles. . . . The picture of a child "engaged in sexually explicit conduct" within the meaning of 18 U.S.C. §§ 2251 and 2252 as defined by [§ 2256(2)(E)] is a picture of a child's sex organs displayed lasciviously--that is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.

Id. at 1244. See also United States v. Cross, 928 F.2d 1030, 1042-43 n.34 (11th Cir. 1991), cert. denied, __ U.S. __, 112 S. Ct. 594 (1991), and __ U.S. __, 112 S. Ct. 941 (1992); Arvin, 900 F.2d at 1389; Mr. A., 756 F. Supp. at 329; United States v. McCormick, 675 F. Supp. 223, 224 (M.D. Pa. 1987).

Children posing for pornographic pictures may suffer dramatic harm regardless of whether they have an "adult" look of sexual invitation or coyness on their face. Therefore, we adhere to the view that "lasciviousness" is an inquiry that the finder of fact must make using the Dost factors and any other relevant factors given the particularities of the case, which does not involve an inquiry concerning the intent of the child subject. Our interpretation of the "lasciviousness" element is consistent with the plain meaning of the statute and furthers Congress' intent in eradicating the pervasive harm children experience when subjected to posing for pornographic purposes.

Thus, we conclude that a "lascivious exhibition of the genitals or pubic area" of a minor necessarily requires only that the material depict some "sexually explicit conduct" by the minor subject which appeals to the lascivious interest of the intended audience. Applying this standard in the present case, it is

31

readily apparent that the tapes in evidence violate the statute. In several sequences, the minor subjects, clad only in very tight leotards, panties, or bathing suits, were shown specifically spreading or extending their legs to make their genital and pubic region entirely visible to the viewer. In some of these poses, the child subject was shown dancing or gyrating in a fashion indicative of adult sexual relations. Nearly all of these scenes were shot in an outdoor playground or park setting where children are normally found. Although none of these factors is alone dispositive, the totality of these factors lead us to conclude that the minor subjects were engaged in conduct--namely, the exhibition of their genitals or pubic area--which would appeal to the lascivious interest of an audience of pedophiles.

Since the statutory language does not suggest that a nude exhibition is necessary, Knox bears the burden of demonstrating a clear contrary congressional intent to warrant importing into the statute an unexpressed requirement of nudity. See Malloy, 860 F.2d at 1183. In our prior opinion, we reviewed the legislative history and concluded that it supported our interpretation of the statutory language. See United States v. Knox, 977 F.2d 815, 820-21 (3d Cir. 1992), vacated and remanded, __ U.S. __, 114 S. Ct. 375 (1993). After further examining the relevant legislative history, however, we conclude that it is wholly silent as to whether Congress intended the statutory term "lascivious exhibition of the genitals or pubic area" to encompass non-nude depictions of these body parts.

32

The legislative proposal before the original child pornography statute was enacted in 1977 would have proscribed "nudity, which nudity is depicted for the purpose of sexual stimulation or gratification of any individual who may view such depiction."  S. 1011, 95th Cong., 2nd Sess. (1977).  Since Congress considered including nudity as an element of a criminal depiction, we continue to believe that the decision to eliminate this requirement must be deemed intentional.  Thus, when Congress passed the 1977 Act prohibiting a "lewd exhibition of the genitals or pubic area of any person," it may have desired to criminalize both clothed and unclothed visual images of a child's genitalia if they were lewd.[0]  Clearly, Congress could have expressly limited the statute's scope to encompass only naked displays by prohibiting the "lascivious exhibition of the nude genitals or pubic area of any person."  But this is not the language Congress included in the statute.[0]

---

[0] A subsequent amendment, the Child Protection Act of 1984, replaced "lewd" with the word "lascivious," but the two words have nearly identical meanings.  United States v. Wiegand, 812 F.2d 1239, 1243 (9th Cir.), cert. denied, 484 U.S. 856, 108 S.Ct. 164 (1987).

[0] Furthermore, Congress failed to articulate anywhere in its extensive legislative history any desire that the statute, as enacted, prohibit only nude portrayals, or only depictions in which the minor subject's genitals or pubic area are discernible or at least somewhat visible.  See H.R. Rep. No. 99-910, 99th Cong., 2nd Sess. (1986), reprinted in 1986 U.S.C.C.A.N. 5952-59; S. Rep. No. 98-169, 98th Cong., 2nd Sess. (1983), reprinted in 1984 U.S.C.C.A.N. 492; H.R. Rep. No. 98-536, 98th Cong., 2nd Sess. (1983); S. Rep. No. 95-438, 95th Cong., 2nd Sess. (1977), reprinted in 1978 U.S.C.C.A.N. 40-68; H.R. Rep. No. 95-696, 95th Cong., 2nd Sess. (1977), reprinted in 1978 U.S.C.C.A.N. 69-71; H.R. Conf. Rep. 99-910, 99th Cong., 2nd Sess. (1977).

Appellant Knox and the government, however, rely on a letter from the Justice Department outlining its views concerning S. 1001, the original proposed bill (containing the nudity language), as evidence that Congress assumed that an exhibition meant a nude, or as the government contends at least a discernible, exhibition of the genitals or pubic area. See Protection of Children Against Sexual Exploitation: Hearings before the Subcomm. to Investigate Juvenile Delinquency of the Comm. of the Judiciary, 95th Cong., 1st Sess. 77-78 (1977), reprinted in 1978 U.S.C.C.A.N. 63 (letter from Patricia M. Wald, Assistant Attorney General to James O. Eastland, Chairman, Committee of the Judiciary).  After suggesting that "lewd exhibition of the genitals" replace the proposed nudity language, the Assistant Attorney General stated, "Congress could make clear in the legislative history of the bill what types of nude portrayals of children were intended to be encompassed within this definition."  Id.  Upon reexamination, we believe there are two plausible interpretations of this letter and, thus, we conclude that it is not helpful in determining Congress' intent.

Under the first interpretation, which we adopted in our prior opinion, the Wald letter assumes that Congress only desired to prohibit nude exhibitions because at that time the language of the proposed bill included the word "nudity."  By subsequently eliminating the word "nudity," Congress appears to have repudiated its earlier intention to confine the statute's coverage to nude exhibitions.  Alternatively, it is arguably significant that the language suggesting that Congress clarify

34

what types of nude portrayals would be prohibited was contained in the very letter recommending the substitution of the phrase "lewd exhibition of the genitals" for the original nudity language.  Protection of Children, supra, 95th Cong., 1st Sess. 77-78.  In light of this legislative history, Knox and the government submit that Congress omitted any reference to nudity in the statute by replacing it with the phrase "lewd exhibition of the genitals or pubic area," which does not encompass any depiction of completely clothed, or non-discernible, genitals or pubic area.

Because we find both interpretations of this letter plausible, and the legislative history in toto to be silent as to whether Congress intended the statute to reach non-nude depictions, we do not rely on it in adhering to our prior statutory interpretation.[0]  We conclude that Knox has not met his

---

[0]Nor do we rely on the legislative pronouncements concerning this statute and case recently passed by both houses of Congress. On November 4, 1993, the Senate unanimously adopted an amendment to an unrelated bill confirming "the intent of Congress" that 18 U.S.C. § 2256(2)(E) "is not limited to nude exhibitions or exhibitions in which the outlines of those areas [are] discernible through clothing."  139 Cong. Rec. S14,976 (Daily ed., Nov. 4, 1993).  Subsequently on April 20, 1994, the House of Representatives passed by a vote of 425-3 a similar nonbinding resolution expressing the sense of Congress that "the Department of Justice has used its brief in the Knox case as a vehicle for reinterpretation of the child pornography laws in contravention to legislative history," and that "Congress specifically repudiated a nudity requirement for child pornography statutes." 140 Cong. Rec. H2536 (Daily ed., Apr. 20, 1994).

These resolutions are post-enactment legislative history which should be given little, if any, weight because they do not necessarily reflect the intent of the members of Congress who originally enacted the statutory language.  As Justice Scalia stated concerning subsequent legislative history:

35

burden of proving that Congress intended the statute to reach only a nude "lascivious exhibition of the genitals or pubic area."  Thus, we will not read a nudity requirement into a statute that has none.

The underlying rationale for the federal child pornography laws also supports the conclusion that clothed exhibitions of the genitalia are proscribed.  When an obscenity statute is challenged as unconstitutional under the First Amendment, the Supreme Court balances the government's interest in protecting the sensibilities of unwilling recipients from exposure to pornography against the dangers of government censorship.  Miller v. California, 413 U.S. 15, 93 S.Ct. 2607

---

"Subsequent legislative history"--which presumably means the post-enactment history of a statute's consideration and enactment--is a contradiction in terms.  The phrase is used to smuggle into judicial consideration legislators' expressions not of what a bill currently under consideration means (which, the theory goes, reflects what their colleagues understood they were voting for), but of what a law previously enacted means.
. . .
Arguments based on subsequent legislative history, like arguments based on antecedent futurity, should not be taken seriously, not even in a footnote.

Sullivan v. Finkelstein, 496 U.S. 617, 631-32, 110 S. Ct. 2658, 2667 (1990) (Scalia, J, concurring in part).

The language of the child pornography statute at issue in this case was enacted in 1977, and amended in 1984.  Since that time there has been such a large turnover in Congress that a majority of the legislators who voted for the recent legislative pronouncements had no role in the passage of the original statute.  Thus, we do not consider the subsequent legislative history as providing any indication that the enacting Congress intended the scope of the child pornography statute to cover non-nude depictions.

36

(1973).  Because the government interest, although legitimate, is not compelling, regulation of obscene materials is limited to works which "appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value."  Id. at 24, 93 S. Ct. at 2615.

The Supreme Court allows the states and Congress greater leeway to regulate and proscribe pornography that depicts minors as distinguished from adults since the harmful effects suffered by a child are palpably more severe.  New York v. Ferber, 458 U.S. 747, 756–61, 102 S. Ct. 3348, 3354–57 (1982).  The Court relaxes the Miller obscenity test when pornographic material portrays minors since the government's interest in "safeguarding the physical and psychological well–being of a minor" is "compelling."  Id. at 756–57, 102 S. Ct. at 3354 (quoting Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 607, 102 S. Ct. 2613, 2620 (1982)).  The use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child.  Id. at 757, 102 S. Ct. at 3355; Osborne v. Ohio, 495 U.S. 103, 109, 110 S. Ct. 1691, 1696 (1990).  The psychological effect of visually recording the sexual exploitation of a child is devastating and its elimination is of "surpassing importance."  Ferber, 458 U.S. at 757, 102 S. Ct. at 3355.  Since the child's image is permanently recorded, the pornography may haunt him or her for a lifetime because the child will be aware that the offensive photograph or film is circulating through the masses.  Id. at 759

n.10, 102 S. Ct. at 3355 n.10 (quoting Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L. Rev. 535, 545 (1981)). The crime is the affront to the dignity and privacy of the child and the exploitation of the child's vulnerability:

> Human dignity is offended by the pornographer. American law does not protect all human dignity; legally, an adult can consent to its diminishment. When a child is made the target of the pornographer-photographer, the statute will not suffer the insult to the human spirit, that the child should be treated as a thing.

United States v. Wiegand, 812 F.2d 1239, 1245 (9th Cir.), cert. denied, 484 U.S. 856, 108 S. Ct. 164 (1987). Additionally, controlling the production and dissemination of child pornography is of paramount importance since pedophiles often use child pornography to seduce other children into performing sexual acts. Osborne, 495 U.S. at 111, 110 S. Ct. at 1697.

To vindicate the compelling government interest in protecting the safety and welfare of children, not only is the spectrum of constitutionally unprotected pornographic material broader when the subjects are children rather than adults, but also the arsenal of available enforcement mechanisms is more extensive. For instance, the mere possession of child pornography, even in one's home, may be criminalized although only distribution of obscenity depicting adults can be proscribed. Compare Stanley v. Georgia, 394 U.S. 557, 568, 89 S. Ct. 1243, 1249 (1969) (Georgia statute outlawing private possession of obscenity violates the First Amendment) with Osborne, 495 U.S. at 108, 110 S. Ct. at 1695-97 (Ohio statute

38

criminalizing possession of child pornography upheld against First Amendment challenge due to the compelling interest in protecting minors).

The harm Congress attempted to eradicate by enacting the child pornography laws is present when a photographer unnaturally focuses on a minor child's clothed genital area with the obvious intent to produce an image sexually arousing to pedophiles. The child is treated as a sexual object and the permanent record of this embarrassing and humiliating experience produces the same detrimental effects to the mental health of the child as a nude portrayal. The rationale underlying the statute's proscription applies equally to <u>any</u> <u>lascivious</u> exhibition of the genitals or pubic area whether these areas are clad or completely exposed.

Knox next asserts that our decision in <u>United States v. Villard</u>, 885 F.2d 117 (3d Cir. 1989), mandates that the genitals or pubic area be exposed before an exhibition may occur. In <u>Villard</u>, we stated that "more than merely nudity" was required for a violation of the statute; otherwise, "inclusion of the term `lascivious' would be meaningless." <u>Id.</u> at 121. The requirement of more than mere nudity does not mean, as Knox contends, that nudity is a prerequisite to the existence of an exhibition; rather, <u>Villard</u> simply stated the obvious principle that nudity alone is insufficient to constitute a <u>lascivious</u> exhibition. No one seriously could think that a Renoir painting of a nude woman or an innocuous family snapshot of a naked child in the bathtub violates the child pornography laws. Nudity must be coupled with

39

other circumstances that make the visual depiction lascivious or sexually provocative in order to fall within the parameters of the statute. Such was our holding in Villard, which addressed whether sufficient evidence existed to justify a finding of lasciviousness.

In our prior opinion we went on to state that our holding in Villard provides support for our conclusion that a "lascivious exhibition" includes non-nude depictions of a minor's genitals or pubic area. See Knox, 977 F.2d at 822-23. We came to that conclusion because inclusion of the fourth Dost factor, "whether the child is fully or partially clothed, or nude," seemed to "rest[] on the implicit assumption that a clothed exhibition of the genitals is criminalized under the statute." Id. at 823. Knox argues that our reliance on this authority was misplaced because the determination of whether a certain depiction visually displays the minor subject's genitals or pubic area is a threshold inquiry required by the language of the statute itself, whereas consideration of the Dost factors is relevant only for the later determination of whether that depiction is lascivious. See United States v. Arvin, 900 F.2d 1385, 1391 (9th Cir.), cert. denied, 498 U.S. 1024, 111 S. Ct. 672 (1991). Knox further contends that it is possible for a minor subject to be fully clothed and still exhibit his or her fully exposed genitals--e.g., a well directed side-angle camera shot could reveal the genitals through an opening in the subject's shorts or skirt.

40

Upon further consideration, we agree with Knox and the _Arvin_ court that the question whether the depiction at issue visually exhibits the genitals or pubic area is a threshold determination not necessarily guided by the _Dost_ factors. However, we do not agree that the _Dost_ factors are completely irrelevant to this threshold determination. For instance, the first _Dost_ factor, "whether the focal point of the visual depiction is on the child's genitalia or pubic area," 636 F. Supp. at 832, may play an important role in the determination of whether the child subject's genitals or pubic area are on exhibit within the meaning of the statute. Nevertheless, although the fourth _Dost_ factor arguably provides no support for our interpretation of the statute as reaching lascivious depictions of a child's fully covered genitals or pubic area, it is clearly not inconsistent with that interpretation.

After giving further consideration to the language of the statute, its legislative history, the underlying rationale for the federal child pornography laws, and the brief of Solicitor General submitted on behalf of the United States, we hold that the statutory term "lascivious exhibition of the genitals or pubic area," as used in 18 U.S.C. § 2256(2)(E), does not contain any requirement that the child subject's genitals or pubic area be fully or partially exposed or discernible through his or her opaque clothing. The statutory language is clear and contains no ambiguity. Therefore, the rule of lenity should not be applied to defeat the clear intent of Congress to prohibit the possession of child pornography to the maximum extent allowable

41

under the Constitution.  See, e.g., <u>National Org. for Women, Inc. v. Scheidler</u>, __ U.S. __, __, 114 S. Ct. 798, 806 (1994) ("the rule of lenity applies only when an ambiguity is present; 'it is not used to beget one'" (quoting <u>United States v. Turkette</u>, 452 U.S. 576, 587–88 n.10, 101 S. Ct. 2524, 2531 n.10 (1981)); <u>Liparota v. United States</u>, 471 U.S. 419, 427, 105 S. Ct. 2084, 2089 (1985) ("the rule of lenity is not to be applied where to do so would conflict with the implied or expressed intent of Congress"); <u>United States v. Bramblett</u>, 348 U.S. 503, 509–10, 75 S. Ct. 504, 508 (1955).[0]

V.

---

[0] Knox contends that because his prosecution and conviction for violating the federal child pornography laws was the first involving materials which contain absolutely no nudity, the rule of lenity must be applied.  At the outset, we repeat that the rule of lenity does not apply in this case because the statutory language contains no ambiguity.  We also reject this contention because it misconceives the object of the rule of lenity and would produce an absurd result.  First, the application of the rule of lenity is not dependent whatsoever on whether there have been successful prosecutions under the statute at issue.  <u>Cf., e.g.</u>, <u>Ratzlaf v. United States</u>, __ U.S. __, __, 114 S. Ct. 655, 662–63 (1994) (Court applied the rule of lenity because of an ambiguity in the statute, even though there had been many previous successful prosecutions under the statute).  The rule of lenity "'comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrong-doers.'" <u>Russello v. United States</u>, 464 U.S. 16, 29, 104 S. Ct. 296, 303 (1983) (quoting <u>Callanan v. United States</u>, 364 U.S. 587, 596, 81 S. Ct. 321, 326 (1961)); <u>see also</u> <u>United States v. Pollen</u>, 978 F.2d 78, 85 (3d Cir. 1992), <u>cert. denied</u>, __ U.S. __, 113 S. Ct. 2332 (1993).  Second, if we were to agree with Knox's argument, then the government would never be able to successfully prosecute a person for violating a newly enacted criminal statute, nor would the government be able to successfully proceed under a theory different from that which has yielded convictions in the past.

Interpreting an "exhibition of the genitals or pubic area" to include a clothed display of these areas does not render the statute unconstitutionally overbroad.[0] The function of the First Amendment overbreadth doctrine is to prevent broadly worded statutes which control constitutionally unprotected conduct from deterring constitutionally protected expression. Invalidating a statute as overbroad, however, is an exceptional remedy and should be employed sparingly and only as a last resort since it is "strong medicine." Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S. Ct. 2908, 2916 (1973). Before a child pornography statute is declared unconstitutional, the overbreadth must "not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Id. at 615, 93 S. Ct. at 2918. The requirement of substantial overbreadth is equally applicable to challenges that arise in defense of a criminal prosecution. Ferber, 458 U.S. at 772-74, 102 S. Ct. at 3363.

In Ferber, the Supreme Court held that the New York statute which criminalized the "lewd exhibition of the genitals" was not constitutionally overbroad. Id. Although some protected expression, ranging from medical textbooks to National Geographic photographs, could possibly be reached by the statute, this tiny fraction of materials within the statute's coverage could be protected by case-by-case analysis. Id. Furthermore, the Supreme Court has repeatedly emphasized that the constitutional

---

[0] The term "pubic area" cannot be challenged as vague or overbroad since Knox contends, and we agree, that this phrase describes a precise anatomical region.

43

rights of adults to obtain, possess, or use sexually explicit material may be limited in order to protect children from exposure to these materials and from sexual exploitation. See Ginsberg v. New York, 390 U.S. 629, 634-43, 88 S. Ct. 1274, 1277-82 (1968) (the right to publish and distribute non-obscene material may be limited by banning its sale to minors); Ferber, 458 U.S. at 756, 102 S. Ct. at 3354 ("States are entitled to greater leeway in the regulation of pornographic depictions of children" than in protecting against obscenity).

Knox's prediction that our interpretation of an exhibition will result in prosecutors leafing through family albums and church bulletins containing innocent pictures of fully clothed children and pressing charges is unfounded. The limiting principle in the statute is the requirement of lasciviousness.[0] A visual depiction of a child subject's genitals or pubic area, whether the child is clothed or naked, must be lascivious in order to be proscribed. Whether a depiction is lascivious is essentially an inquiry into whether or not the material meets the standard of lasciviousness as guided by the Dost factors. Villard, 885 F.2d at 122; see supra note 10. Only a minuscule fraction of all pictures of minor children will be sufficiently sexually suggestive and unnaturally focused on the genitalia to qualify as lascivious. Even fewer images where a minor's genital

---

[0]The issue is not raised in this case, but we note that although the meaning of lasciviousness is far from crystal clear, it is not unconstitutionally vague or overbroad. See United States v. O'Malley, 854 F.2d 1085, 1086-87 (8th Cir. 1988); Wiegand, 812 F.2d at 1243.

area is not fully exposed will constitute lascivious exhibitions since the fact that a child's genital area is covered is a factor militating against a finding of lasciviousness. Thus, including scantily clothed displays of the genitals within the meaning of an exhibition leaves the statute "directed at the hard core of child pornography," Ferber, 458 U.S. at 773, 102 S. Ct. at 3363, which results in leaving an indelible psychological scar on the exploited child. Our interpretation simply declines to create an absolute immunity for pornographers who pander to pedophiles by using as their subjects children whose genital areas are barely covered.

VI.

On remand, Knox again contends that insufficient evidence was presented at trial for a trier of fact to have found, beyond a reasonable doubt, that (1) the Nather tapes traveled through the mail in interstate commerce; and (2) Knox "knowingly" received child pornography through the mail and "knowingly" possessed three pornographic videotapes. Generally, this court must examine the evidence as a whole in the light most favorable to the government, and must sustain a conviction if there is substantial evidence to support it. United States v. Carr, No. 93-1796, 1994 WL 237007, at *4-5 (3d Cir. June 3, 1994). When we previously rejected Knox's arguments on this point, we noted that Knox had not timely filed his post-trial motion for acquittal, and thus indicated that the sufficiency of evidence issues might be reviewed only for plain error. Knox,

45

977 F.2d at 824. Nevertheless, we concluded that we did not need to determine whether "the plain error test and the sufficiency of evidence standard are essentially equivalent inquiries" because the government fulfilled the more stringent standard of establishing that the evidence was sufficient "to support the district court's finding that the Nather tapes traveled through the mail and that Knox knowingly received and possessed those films." Id.

In its brief submitted to the Supreme Court, the government indicated that we were mistaken in reviewing the evidence only for plain error. Gov't Sup. Ct. Brief (Sept. 1993) at 21-22 n.10. We acknowledge that the analysis following our introductory paragraph quoted above was somewhat unclear as to whether we were applying the plain error or sufficiency of evidence test. We now clarify the conclusion expressed in our prior opinion that the government did indeed introduce sufficient evidence for the district court to conclude beyond a reasonable doubt that Knox knowingly received the Nather films and that those films traveled through the mail.

To establish interstate mailing, the government introduced evidence that Knox rented a mailbox under a fictitious name and that he received other pornographic materials at that mailbox. When agents searched Knox's apartment pursuant to a valid search warrant, they discovered advertisements from Nather with checkmarks next to several videotapes and envelopes, pre-addressed to Nather, with forms to order Nather tapes. One of the videos marked in the catalog was included as a segment of a

46

compilation tape found in Knox's apartment.  A carbon copy of a $62 money order payable to Nather was also seized from Knox's apartment.  Sixty-two dollars is the approximate price of a single Nather tape.  Knox is correct that the government never introduced direct evidence that Nather mailed tapes to Knox's rented mailbox.  A trier of fact, however, may consider direct and circumstantial evidence and the reasonable inferences to be drawn therefrom.

The above facts provide strong circumstantial support that Nather, a Nevada mail order video company without any offices in Pennsylvania, at some point utilized the postal system to cause the tapes it distributes to be discovered in Knox's apartment in Pennsylvania.  Cf. Turner v. United States, 396 U.S. 398, 415-17, 90 S. Ct. 642, 652-53 (1970) (although some heroin is produced in this country, the vast majority of heroin is produced abroad; thus, jury could permissibly infer, beyond a reasonable doubt, that defendant possessed a smuggled drug).  The circumstantial evidence was sufficient for the district court to conclude beyond a reasonable doubt that the Nather films traveled through the interstate mails.

The record also contains sufficient evidence for the district court to conclude beyond a reasonable doubt that Knox "knowingly" received and possessed the Nather tapes.  Knox maintains that the absence of nudity in the films and the disclaimers in the Nather brochures that the videos were legal to purchase and own disproves the mens rea element of § 2252.  We have previously held that the mens rea requirement of § 2252

47

"does not require that a recipient of child pornography know the precise contents of such materials." United States v. Brown, 862 F.2d 1033, 1036 (3d Cir. 1988). In Brown, the defendant ordered one film, but accidentally received a different tape. Since the defendant knew the video he requested was child pornography, we deemed it irrelevant that he did not know the exact contents of the substituted tape actually mailed to him.

Knox's argument in this case is somewhat different. He claims that although he knew the contents of the Nather tapes, he was unaware that the videos were child pornography and believed they were legal to own. To address this contention, we look to the Supreme Court's interpretation of a strikingly similar statute for guidance. To fulfill the "knowingly" requirement of 18 U.S.C. § 1461 (the obscenity law concerning adults),[0] the Supreme Court held that the prosecution need only show that the defendant had knowledge of the contents, character, and nature of the materials. Hamling v. United States, 418 U.S. 87, 123, 94 S. Ct. 2887, 2910 (1974). To require proof that the defendant knew the materials were obscene, and thus illegal to distribute, would allow defendants to avoid prosecution by claiming ignorance of the relevant law. Id. It would be ironic to construe the same word, "knowingly," in the analogous child pornography law as more lenient to criminal defendants since the purpose for enacting the

---

[0]Title 18 U.S.C. § 1461 provides in pertinent part: "Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section . . . to be nonmailable . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both . . . ."

48

child pornography statute was to create more stringent regulation for child pornography than already existed through the generally applicable obscenity laws. Therefore, to fulfill the knowledge element of § 2252, a defendant simply must be aware of the general nature and character of the material and need not know that the portrayals are illegal. See United States v. Moncini, 882 F.2d 401, 404 (9th Cir. 1989) (no need to prove knowledge of illegality under § 2252); United States v. Tolczeki, 614 F. Supp. 1424, 1429 (N.D. Ohio 1985) (same). The child pornography laws would be eviscerated if a pedophile's personal opinion about the legality of sexually explicit videos was transformed into the applicable law.

There is no doubt that Knox was aware of the nature of the Nather tapes when he received them. Newsletters from Nather found in Knox's apartment described the contents of the films-- "girls between the ages of 11 and 17 showing so much panty and ass you'll get dizzy . . . so revealing it's almost like seeing them naked"--and the video's intended effects--"Sassy Sylphs will blow your mind so completely you'll be begging for mercy." Knox handwrote his own descriptions of the Nather films on the outside of the boxes. For instance, on the Nather II tape, Knox wrote "13-year old flashes" followed by "hot." Knox characterizes the second vignette as "15 year old shows nipple." Both Nather's and Knox's descriptions of the tapes clearly demonstrate that Knox was aware that the videotapes contained sexually oriented materials designed to sexually arouse a pedophile. Sufficient evidence was presented at the bench trial to support a finding

49

that Knox was aware of the nature of the Nather tapes, and therefore knowingly possessed and received them.

Even if a reasonable mistake as to the legality of the material was recognized as a defense, the language of the statute is clear that nudity is not a prerequisite for a lascivious exhibition.  Additionally, relying on Nather's disclaimer is tantamount to asking a hard core pornographer for legal advice as to whether the material he earns a living by selling is legal. Nather's disclaimer could not reasonably lead Knox to believe that the videotapes were legal.  If anything, the need to profess legality should have alerted Knox to the films' dubious legality.


VII.

In sum, after further consideration of the statutory language, legislative history, the purpose of Congress in passing the federal child pornography statute, and the Solicitor General's brief submitted in the Supreme Court, we hold that a "lascivious exhibition of the genitals or pubic area" pursuant to 18 U.S.C. § 2256(2)(E) encompasses visual depictions of a child's genitals or pubic area even when these areas are covered by an article of clothing and are not discernible.  Our interpretation of the statutory language does not render the statute unconstitutionally overbroad since the requirement of lasciviousness limits the proscribed depictions to constitutionally unprotected expression.  Finally, there was sufficient record evidence for the district court to conclude

50

beyond a reasonable doubt that Knox knowingly received and possessed the videotapes and that the films traveled through interstate mail.  The judgment of conviction will therefore be affirmed.