**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-30546
No. 98-30547

UNITED STATES,

Plaintiff, Appellee,

VERSUS

MATTHEW CARROLL,

Defendant, Appellant,

* * * * * * * * * * * * * * * * * * *

UNITED STATES,

Plaintiff, Appellee,

VERSUS

ROBERT RANDALL REINHART,

Defendant, Appellant.

Appeals from the United States District Court
for the Western District of Louisiana

September 14, 1999

Before GARWOOD, DUHÉ, and BENAVIDES, Circuit Judges,

JOHN M. DUHÉ, JR., Circuit Judge:

Matthew Carroll ("Carroll") and Robert Randall Reinhart ("Reinhart") plead guilty to conspiring to engage in the sexual

exploitation of children pursuant to 18 U.S.C. § 2251(a) (West Supp. 1999). The Defendants appeal their sentences and challenge the district court's characterization of two particular minors as victims of the Defendants' exploitation allowing an increase in their offense levels. For the following reasons, we affirm both of the Defendants' sentences.

## BACKGROUND

The district court assigned the Defendants a base offense level of 27. See U.S.S.G. § 2G2.1(a). Because the district court determined their offenses involved the exploitation of four minors, it treated each minor as a separate conviction and applied a multiple count adjustment to determine their combined offense levels. See U.S.S.G. § 2G2.1(c).[1] Each minor constituted a "group" pursuant to § 3D1.1. See U.S.S.G. § 3D1.2.[2] The offense levels of three of the groups were enhanced by two levels because the offense involved a victim who had attained the age of twelve years but not the age of sixteen, and the level of the fourth group

---

[1]Section 2G2.1, comment, n.1 provides:

[s]pecial instruction (c)(1) directs that if the relevant conduct of an offense of conviction includes more than one minor being exploited, whether specifically cited in the count of conviction or not, each such minor shall be treated as if contained in a separate count of conviction.

U.S.S.G. § 2G2.1, comment, n.1.

[2]Section 3D1.2 and § 2G2.1, comment, n.1 provide that multiple counts involving the exploitation of different minors are not to be grouped together under § 3D1.2.

2

was enhanced by four levels because the victim had not attained the age of twelve years. See U.S.S.G. 2G2.1. All of the groups' offense levels were enhanced two levels because the minors were in the custody, care or supervisory control of the Defendants[3], and two levels because the Defendants used a computer to solicit participation by or with a minor in sexually explicit conduct for the purpose of producing sexually explicit material. See U.S.S.G. § 2G2.1(b). The district court added four units to the highest offense level of the groups, 35, for a combined offense level of 39.[4] The district court reduced the Defendants' combined offense levels by three levels because they accepted responsibility for their criminal conduct leaving them with total offense levels of 36. See U.S.S.G. § 3E1.1. The Defendants' total offense level of 36 and a Category I criminal history score resulted in a sentencing range of 188 to 235 months. The district court sentenced both Defendants to 235 months in prison and three years of supervised release.

The district court characterized four minors as victims of the Defendants' exploitation therefore allowing the enhancement of the

---

[3]Both of the Defendants were Boy Scout troop leaders to the minors.

[4]The district court calculated the four units as follows: the group involving the minor under age twelve and having the highest offense level of 38 constituted one unit, while each of the remaining 3 groups constituted a unit because their offense levels were 33 and therefore from one to four levels less serious than the highest group's level. See U.S.S.G. § 3D1.4.

Defendants' sentences.  The Defendants appeal their sentences and challenge the district court's characterization concerning two of the minors: "minor white male #1" ("male #1") and "minor white male #3" ("male #3").  Reinhart took a Polaroid photograph of minor #1, and using a computer scanner cut and pasted the face of minor #1 from the picture onto an image of an unknown nude boy on the computer.  Additionally, both of the Defendants videotaped male #3, an eleven year old boy, changing from gym shorts into lycra bike shorts and a tank top and striking various poses for the men while reading a sexually explicit magazine on an unmade bed.

The Defendants argue the district court clearly erred in determining these episodes constituted "actual or simulated sexually explicit conduct" pursuant to 18 U.S.C. § 2256(2).  See 18 U.S.C. § 2256(2) (West Supp. 1999).  They appeal their sentences and seek a remand to the district court for re-sentencing.

## DISCUSSION

We review the district court's factual findings under the Sentencing Guidelines for clear error and its interpretation and application of the Guidelines de novo.  See United States v. Luna, 165 F.3d 316, 322 (5th Cir. 1999).

As we noted above, § 2G2.1 requires that we treat each minor exploited as a separate conviction for the Defendants.  See U.S.S.G. § 2G2.1.  Because the Defendants plead guilty to conspiring to engage in the sexual exploitation of children

4

pursuant to § 2251(a), the district court treated each of the four minors as a separate conviction under § 2251(a).  Section 2251(a) provides that:

> any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be imprisoned not less than 10 years nor more than 20 years.

18 U.S.C. § 2251(a) (West Supp. 1999).  One prong of the definition of "sexually explicit conduct" is the actual or simulated lascivious exhibition of the genitals or pubic area of any person.  See id. § 2256(2).

The district court specifically found that the Defendants' actions involving photographing male #1 and cutting and pasting a photo of his face onto an image of a nude boy constituted sexually explicit conduct under § 2256(2) because it was the simulated lascivious exhibition of the genitals or pubic area of male #1.  Additionally, the district court found that the videotape of male #3 changing clothes, reading a sexually explicit magazine, and posing at the Defendants' instruction on an unmade bed was sexually explicit conduct as the actual lascivious exhibition of the genitals or pubic area of male #3.

**Male # 1**

The Defendants contend the district court clearly erred in determining that their actions concerning male #1 constituted simulated sexually explicit conduct.  They maintain that, to prove

5

simulated sexually explicit conduct, the government must demonstrate that the minor involved actually engaged in the simulated sexually explicit conduct.

The government argues the Defendants violated § 2251 when they used male #1 to engage in the sexually explicit conduct of simulating the lascivious exhibition of male #1's genitals or pubic area by superimposing the photo of male #1's face onto the computer image of another nude boy.[5]

We begin by examining the text of the statute. See Richardson v. United States, 119 S. Ct. 1707, 1710 (1999) ("When interpreting a statute, we look first to the language.").[6]  As noted above, § 2251(a) provides that:

> [a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided in subsection (d).

---

[5]The government also contends that § 2251 does not require that a minor actually engage in sexually explicit conduct, but only that the Defendants use, persuade, induce, entice or coerce a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct.  Because we conclude that the government's first contention sufficiently supports the Defendants' sentences, we need not address this argument.

[6]While other courts have interpreted the "actual . . . lascivious exhibition of the genitals and pubic area" language, our search did not reveal another court's interpretation of the "*simulated* . . . lascivious exhibition" language.  See id. § 2256(2) (italics added).

6

18 U.S.C. 2251(a) (West Supp. 1999).  This subsection actually contains three separate offenses: (1) any person who employs, uses persuades, induces, entices, or coerces any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct; (2) any person who has a minor assist any other person to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct; and (3) any person who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct.  See id.; United States v. Carroll, 105 F.3d 740, 743-45 (1st Cir. 1997).  All three offenses contained within § 2251(a) reference the phrase "sexually explicit conduct."  Section 2256(2) defines "sexually explicit conduct" as:

actual or simulated –

(A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(B) bestiality;

(C) masturbation;

(D) sadistic or masochistic abuse; or

(E) lascivious exhibition of the genitals or pubic area of any person.

18 U.S.C. § 2256(2) (West Supp. 1999).

Carroll and Reinhart were convicted under the first clause of

7

§ 2251(a): any person who employs, uses persuades, induces, entices, or coerces any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct. See id. § 2251(a). As noted above, the district court held that the Defendants' conduct constituted the "simulated . . . lascivious exhibition of the genitals" prong of "sexually explicit conduct." See id. § 2256(2).

The literal meaning of the language in § 2256(2)(E) supports the district court's ruling. The Defendants clearly used male #1 to engage in the simulated lascivious exhibition of male #1's genitals. The key word is "simulate". Simulate means "to give the appearance of or effect of; feign, imitate." Webster's Third New International Dictionary. By photographing male #1 and cutting and pasting the photo of male #1's face onto an image of a nude child on the computer, the Defendants created a computer picture that attributed the nude body of the unknown boy to male #1. The image the Defendants constructed created the appearance of or feigned the lascivious exhibition of male #1's genitals.

The legislative history of § 2251 also supports our literal interpretation. See Fischl v. General Motors Acceptance Corporation, 708 F.2d 143, 146 (5th Cir. 1983) ("Although the 'starting point [in any case involving statutory construction] must be the language employed by Congress', we may examine the relevant legislative history of a particular statute in order to ensure that its literal application fulfills manifest congressional intent.")

8

(quoting <u>Reiter v. Sonotone Corp.</u>, 442 U.S. 330, 337 (1979) and citing <u>Watt v. Alaska</u>, 451 U.S. 259 (1981)).  In 1996, Congress enacted the Child Pornography Prevention Act appending the following Congressional Findings to § 2251:

> (5) **[N]ew photographic and computer imaging technologies make it possible to produce by electronic, mechanical, or other means, visual depictions of what appear to be children engaging in sexually explicit conduct that are virtually indistinguishable to the unsuspecting viewer from unretouched photographic images of actual children engaging in sexually explicit conduct;**
>
> (6) [C]omputers and computer imaging technology can be used to –
>
>> (A) alter sexually explicit photographs, films, and videos in such a way as to make it virtually impossible for unsuspecting viewers to identify individuals, or to determine if the offending material was produced using children;
>>
>> (B) produce visual depictions of child sexual activity designed to satisfy the preferences of individual child molesters, pedophiles, and pornography collectors; and
>>
>> (C) alter innocent pictures of children to create visual depictions of those children engaging in sexual conduct;
>
> (7) **[T]he creation or distribution of child pornography which includes an image of a recognizable minor invades a child's privacy and reputational interests, since images that are created showing a child's face or other identifiable feature on a body engaging in sexually explicit conduct can haunt the minor for years to come;**
>
> (8) [T]he effect of visual depictions of child sexual activity on a child molester or pedophile using that material to stimulate or whet his own sexual appetites, or on a child where the material is being used as a means of seducing or breaking down the child's inhibitions to sexual abuse or exploitation, is the same whether the child pornography consists of photographic depictions of

actual children or visual depictions produced wholly or in part by electronic, mechanical, or other means, including by computer, which are virtually indistinguishable to the unsuspecting viewer from photographic images of actual children.

(13) the elimination of child pornography and the protection of children from sexual exploitation provide a compelling government interest for prohibiting the production, distribution, possession, sale, or viewing of visual depictions of children engaging in sexually explicit conduct, including both photographic images of actual children engaging in such conduct and depictions produced by computer or other means which are virtually indistinguishable to the unsuspecting viewer from photographic images of actual children engaging in such conduct.

Child Pornography Prevention Act of 1996, Pub.L. 104-208, 110 Stat. 3009-26 (emphasis added). These findings demonstrate that Congress intended to prohibit the Defendants' conduct.

Further support for our construction of the "simulated lascivious exhibition of the genitals or pubic area" prong of "sexually explicit conduct" is found by examining the result if we were to construe the section otherwise. If § 2251(a) does not cover the Defendants' conduct, then it will be illegal to distribute, reproduce for distribution, sell or possess visual depictions like the one the Defendants created, but it will not be illegal to create them. Section 2252 governs the trafficking of child pornography prohibiting the sale, distribution, and possession of a "visual depiction involv[ing] the use of a minor engaging in sexually explicit conduct." Id. § 2252. Section 2252A, created by the Child Pornography Prevention Act of 1996, mirrors § 2252 except that it defines the prohibited material as

10

"child pornography". See id. § 2252A. Section 2256(8) defines

"child pornography" as:

> any visual depiction, including any photograph, film, video, picture, or computer generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where --
>
>> (A) the production of such visual depiction involves the use of minor engaging in sexually explicit conduct;
>>
>> (B) such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct;
>>
>> (C) such visual depiction has been created, adapted or modified to appear that an identifiable minor is engaging in sexually explicit conduct; or
>>
>> (D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct.

Id. § 2256(8). Section 2256(8)(C)'s definition of "child pornography" clearly covers the conduct at issue because the Defendants did actually "alter innocent pictures of [a child] to create visual depictions of [that child] engaging in sexual conduct." Id. § 2256(8)(C). Section 2251(a) does not contain similar language; therefore, if we do not construe § 2251(a) as we propose, § 2252A would prohibit the trafficking of visual depictions like the ones the Defendants' created, but § 2251(a) would not prohibit the actual creation of such depictions. The Congressional Findings appended to § 2251 demonstrate Congress did not intend this anomalous result.

However, § 2256(8)'s multi-pronged definition of "child

11

pornography" initially seems problematic for our construction of the "simulated lascivious exhibition" prong of "sexually explicit conduct" § 2251(a). Section 2256(8) also defines "child pornography" as "any visual depiction . . . [where] the production of such visual depiction *involves the use of minor engaging in sexually explicit conduct*." Id. § 2256(8)(A) (italics added). This language is very similar to the language at issue in § 2251(a). See id. § 2251(a) ("any person who . . . uses . . . any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct."). One conclusion from the wording of § 2256(8)'s definition of "child pornography" is that if § 2256(8)(A) covered the Defendants' conduct, there would be no need for § 2256(8)(C)'s definition which clearly covers their conduct. In other words, if we construe "sexually explicit conduct" in subsection § 2256(8)(A) as we propose in § 2251(a), it could render § 2256(8)(C)'s language unnecessary. However, on closer examination of the two sections, our construction of § 2251(a) and the language of § 2256(8)(A) and § 2256(8)(C) are reconcilable.

All of the subsections of § 2256(8) overlap in one way or another. See United States v. Hilton, 167 F.3d 61, 66 (1st Cir. 1999) ("There is some overlap in the definition of child pornography--material created by manipulating an image of an "identifiable minor" would typically, but not necessarily, appear

12

to be of a minor; similarly, an image showing an actual minor would probably also "appear to be a minor." . . . [I]mages of a purely fictional child might only satisfy the "appears to be a minor" test."). Therefore, the fact that § 2256(8)(A) and § 2256(8)(C) both cover the Defendants' conduct in this case does not defeat our construction of the "simulated lascivious exhibition" prong of "sexually explicit conduct." Congress obviously cast its net wide to ensure that new technology would not defeat the effectiveness of the Child Pornography Prevention Act. The overlap of § 2256(8)'s subsections combined with Congress' intent that § 2251 reach the Defendants' conduct, demonstrated by its findings appended to § 2251, is a strong basis for reconciling § 2251 and § 2256(8)(A) & § 2256(8)(C).

Another way to reconcile the two sections is by examining their language. Section 2251(a) and § 2256(8)(A) do not use identical language. The difference is subtle, but the change of a few words could arguably dramatically alter the conduct covered by the two sections. As discussed above, the Defendants were convicted under the first clause of § 2251(a): any person who uses any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct. See id. § 2251(a). Section 2256(8)(A) defines child pornography as "any visual depiction . . . of sexually explicit conduct where the production of such visual depiction involves the use of minor engaging in sexually explicit conduct." Id. § 2256(8)(A). The

13

important distinction is between the use of the words "to engage" in § 2251(a) and "engaging" in § 2256(8)(A). When a person uses a minor "to engage" in sexually explicit conduct, it is the person, and not the minor, who is doing the activity. A person could use a minor to engage in sexually explicit conduct by taking the minor's picture and altering it, thereby creating a simulated lascivious exhibition of that minor's genitals. In a visual depiction involving the use of a minor engaging in sexually explicit conduct, it is the minor who is doing the activity. Here, a minor would probably not be engaging in the simulated lascivious exhibition of his own genitals by being the subject of an innocent photograph. This small but important difference in the language of the two sections demonstrates why Congress felt it necessary to include § 2256(8)(C) in the definition of "child pornography" to ensure that § 2252A covered visual depictions created through conduct such as the Defendants'. The language of the statute, the legislative history of the statute, and the language of accompanying statutes supports our construction of § 2251(a). For these reasons, we hold that the Defendants' conduct constituted the "simulated . . . lascivious exhibition of the genitals or pubic area" prong of "sexually explicit conduct." See id. § 2256(1).

**Male #3**

The Defendants also contend the district court erred in

14

determining that the videotape of male #3 portrayed sexually explicit conduct.

We apply the six factor <u>Dost</u> test to determine whether a visual depiction of a minor constitutes an actual "lascivious exhibition of the genitals or pubic area" under § 2256(2)(E). <u>See</u> <u>United States v. Knox</u>, 32 F.3d 733, 746 n.10 (3rd Cir. 1994) (citing <u>United States v. Dost</u>, 636 F. Supp. 828 (S.D. Cal. 1986), <u>aff'd</u>, 812 F.2d 1231 (9th Cir. 1987)); <u>United States v. Rubio</u>, 834 F.2d 442, 448 (5th Cir. 1987) (discussing the six <u>Dost</u> factors without citing to the Dost case). The six factors are as follows:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> (2) whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity;
>
> (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> (4) whether the child is fully or partially clothed, or nude;
>
> (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

<u>Knox</u>, 32 F.3d at 746 n.10. The list of factors is not intended to be exhaustive, and no single factor is dispositive. <u>Id.</u>

On the videotape, the Defendants ask male #3 to change from gym shorts into tight fitting lycra shorts and direct him to pose on an unmade bed for still photographs. Carroll touches male #3 on

15

the thigh, and Reinhart attempts to touch male #3's genitals with a pair of pliers or some other tool. The Defendants also give male #3 a sexually explicit magazine to peruse during the videotape. Male #3's genitals are visible for an instant while he changes his clothes.

The Defendants argue the videotape merely shows male #3 teasing the Defendants and acting silly. They assert that the camera never focuses on the boy's genital or pubic area, the setting is not sexually suggestive, his clothing is not inappropriate, and he is dressed except when he changes clothes. The Defendants also argue that the video does not suggest sexual coyness or willingness to engage in sex and would not arouse a pedophile because the boy is just playing and having fun.

The government argues the videotape does contain sexually explicit conduct because the Defendants directed male #3 to strike poses calculated to display his genital or pubic area. The government also reiterates its previous argument that a minor must not actually engage in sexually explicit conduct to be considered a victim of exploitation under § 2251.

Again, we agree with the government's first argument. The videotape meets at least five out of the six <u>Dost</u> factors. While the video camera was stationary and nearly ten feet away from the child, the Defendants directed male #3 to pose on his side with one

16

knee up to expose his genital or pubic area.[7]  The setting of an unmade bed is certainly sexually suggestive.  Male #3's genitals are exposed briefly in the film while he changes clothes, and his perusal of a sexually explicit magazine suggests some willingness to engage in sexual activity.  Additionally, the totality of the circumstances, including the Defendants' photographing the child at close range with a still camera during the videotape, indicate that the video was intended to elicit a sexual response in the viewer.

## CONCLUSION

Because the district court did not clearly err in characterizing male #1 and male #3 as victims of sexual exploitation, we affirm both Defendants' sentences.

**AFFIRM**

---

[7]Lascivious exhibition of the genital or pubic area does not require full or partial nudity.  See United States v. Knox, 32 F.3d 733, 744  (3rd Cir. 1994).

17

GARWOOD, Circuit Judge, dissenting in part:

I concur in all of the majority opinion except that dealing with male #1, as to which I respectfully dissent.  The statute in question, 18 U.S.C. §2251(a), denounces "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct."[1]  "Sexually explicit conduct" includes "simulated: as well as "actual" "lascivious exhibition of the genitals"-which is what is claimed here-and other specified conduct.  18 U.S.C. § 2256(2).[2]

It is not claimed that male #1 ever in fact engaged in either any actual or any simulated sexually explicit conduct.  Male #1 never actually exhibited-or simulated an exhibition of-his (or

---

[1]  Also denounced by section 2251 (a) is any person "who has a minor assist any other person to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct," and any person "who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct."  Neither of these branches of section 2251(a) is claimed to be involved here.

[2]  Section 2256(2) provides that:

"(2) 'sexually explicit conduct' means actual or simulated-

(A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-    anal, whether between persons of the same or opposite sex;
(B) bestiality;
(C) masturbation;
(D) sadistic or masochistic abuse; or
(E) lascivious exhibition of the genitals or pubic area of any person;"

18

another's) genitals. A picture of his face was taken and later-without his knowledge or consent-superimposed on a picture exhibiting the genitals of one not shown to be a minor.

It seems to me that the language of section 2251(a) unambiguously requires that the minor in fact "engage in . . . sexually explicit conduct," whether such sexually explicit conduct be "actual or simulated"; that is, the minor must actually do something-"engage in"-which constitutes actual or simulated sexually explicit conduct. Certainly, that is the most natural reading of section 2251(a). Even if the language were ambiguous in this respect, the rule of lenity would require such a construction. See, e.g., Liparota v. United States, 105 S.Ct. 2084, 2089 (1985) ("our longstanding recognition of the principle that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity,'" citing five cases).

The majority's reliance on the "employs, uses" language of section 2251(a) is misplaced; that language does not obviate the statute's requirement that the "minor . . . engage in . . . sexually explicit conduct." That "engage in" requirement is in addition to the requirement that the defendant have "the purpose of producing any visual depiction" of actual or simulated sexually explicit conduct. The majority's reasoning in this respect would have the statute apply if the defendant knowingly used or employed a minor to purchase the film on which actual or simulated sexually explicit conduct engaged in by others was to be and was depicted.

19

Reprehensible conduct certainly, but not denounced by section 2251(a)

According, I dissent as to male #1.