FILED
United States Court of Appeals
Tenth Circuit

December 15, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL DEAN HELTON,

    Defendant - Appellant.

No. 08-6041
(W.D. Okla.)
(D.Ct. No. 07-CR-00070-D-1)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

Michael Dean Helton was convicted in a bench trial of producing child pornography and was sentenced to 300 months imprisonment. He contends the district court erred in concluding a secret videotape he made of an eleven-year-old girl wearing opaque underpants is a "lascivious exhibition of the genitals or pubic area" prohibited by 18 U.S.C. § 2251(a). He also argues the court erred by calculating his mandatory minimum sentence on the basis of a prior conviction

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

which was not charged in the indictment or proved beyond a reasonable doubt. We affirm.

## I. BACKGROUND

The facts are uncontested.[1] On or about January 3, 2007, Helton's brother and sister-in-law found a camcorder and two videotapes in Helton's bedroom at his residence in Oklahoma City, Oklahoma. After viewing the tapes and discovering the contents, they delivered the tapes to the police.

Government's Exhibit 1 is a copy of one of the videotapes found in Helton's bedroom. It was made by Helton in the fall of 2005. It is approximately ninety minutes long, but the majority of it is blank. One portion of the tape depicts a group of adults sitting around a kitchen table playing cards. The incriminating portion of the tape shows Helton placing a camcorder in the bathroom of his residence at approximately the level of his head. He is later shown retrieving the camcorder and placing it at floor level directly across from the toilet. Helton is shown positioning the camera to angle upward toward the toilet. He is also shown placing paper around the camera to secure and conceal it. Approximately two and one-half minutes of the videotape depict B.M., an eleven-year-old girl, who, along with her mother, M.H., stayed with Helton at his

---

[1] The parties filed a joint stipulation prior to trial and Helton does not dispute the district court's factual findings.

-2-

residence in the fall of 2005.[2]  Helton knew B.M. was under the age of eighteen. B.M. is first seen seated upon the toilet facing the hidden camera located below. B.M.'s face and upper body are visible and she is wearing a bra.  M.H. was with B.M. in the bathroom and a portion of M.H.'s body is also visible.  B.M. stands up and pulls up her underpants.  Her underpants are the center of the focused area.  A portion of her bare midriff and upper legs is visible, but the underpants and pubic area comprise the primary image for one and one-half to two minutes. B.M. then pulls on shorts and walks away from the camera's view.  B.M. and M.H. were not aware they were being recorded.  Government's Exhibit 1A is an excerpt of Exhibit 1 showing only Helton setting up the camera and B.M. and M.H. in the bathroom.

Government's Exhibit 2 is a copy of the second videotape found in Helton's bedroom.  It was made by Helton at his residence in Borger, Texas.  It is approximately ninety minutes long.  A portion of the tape shows Helton concealing a camcorder in a waste basket in the bathroom and arranging it so as to point upwards.  A later portion shows Helton entering the bathroom and rearranging the camcorder, adding toilet paper around it to secure it and adjusting it several times.  Among the depictions shown is an image of M.G., the six or seven-year-old daughter of D.A.G.  M.G. is seen entering the bathroom and

---

[2] The presentence report reveals M.H. is Helton's biological daughter and B.M. is Helton's biological granddaughter.  This fact was discussed by the court at sentencing but was not stipulated to by the parties or specifically found by the court at trial.

sitting on the toilet. Her pubic area and genitals are not exposed. Also depicted is J.J., who was fourteen years old at the time, undressing for a shower. J.J.'s breasts and buttocks are displayed but her pubic area is not visible. Government's Exhibit 2A is an excerpt of Exhibit 2 showing only Helton setting up the camera and M.G. and J.J. in the bathroom.

After Helton's brother and sister-in-law delivered the videotapes to the police, a search warrant was executed at Helton's Oklahoma City residence; the police searched Helton's mobile home, pickup truck and semi-tractor truck. The search resulted in the seizure of approximately 247 items of evidence which reveal Helton's preoccupation with images of women and girls in their underwear. The police discovered five "Panty Play" magazines which depict images of women in their underwear. They also found a number of DVD jackets or containers including: "Real Hidden Panties 6," "Real Hidden Panties 7," and "Real Hidden Panties 8." The DVD covers depict images of women photographed from a lower level so as to reveal the underwear underneath their clothing. The cover to "Real Hidden Panties 6" advertises: "Our hidden cameras sneak in all the places you ever dreamed of going" to "get a glimpse of beautiful females' undies!" (R. Vol. I, Doc. 26 at 5.) A DVD entitled "Perverted Peep Show" was found in Helton's DVD player at his residence. In Helton's pickup truck, the police found 156 photocopied pages showing images of women and girls in their underwear focusing on their genitals or pubic area.

Based on the images depicted in Government's Exhibit 1A, Helton was indicted with one count of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a). Specifically, the indictment charged:

> MICHAEL DEAN HELTON [ ] used a minor girl to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct and the visual depiction was produced using materials that had been mailed, shipped, and transported in interstate or foreign commerce, in that, the defendant secreted a video camera in a bathroom and video-taped an 11-year-old girl in a manner depicting a lascivious exhibition of the genitals and public area of the girl.

(R. Vol. I, Doc. 1.)

The parties jointly requested a non-jury trial pursuant to Rule 23(a) of the Federal Rules of Criminal Procedure and the court granted the request. The parties stipulated to many of the relevant facts discussed above. They also stipulated the camcorder and videotapes were manufactured outside the State of Oklahoma and therefore traveled in interstate commerce. They further stipulated Government's Exhibits 1, 1A, 2 and 2A were true and correct copies of the videotapes Helton produced and were admissible in evidence.

The court found Helton guilty though "acknowledg[ing] that [Helton's] bizarre conduct here is far different from the profoundly unspeakable and destructive types of child pornography usually brought before this court under § 2251(a)." (R. Vol. I, Doc. 26 at 15.)

A presentence report (PSR) was prepared. It stated Helton was subject to a

mandatory minimum sentence of twenty-five years (300 months) imprisonment because he had a prior conviction for sexual abuse of a minor.[3]  Based on a total offense level of 35 and a criminal history category of V, the advisory guideline range was 262 to 327 months imprisonment.  Helton submitted written objections to the PSR arguing his prior conviction was an element of the offense and had to be charged and proved beyond a reasonable doubt.  The court overruled Helton's objection and sentenced him to 300 months imprisonment.

## II.  DISCUSSION

A.  Conviction

The court found Helton guilty of violating 18 U.S.C. § 2251(a) which provides: "Any person who . . . uses . . . any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e) . . .  if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means . . . ."  Helton challenges his conviction on the basis that the videotape he produced (Government's Exhibit 1) did not result in the depiction of a minor

---

[3] The penalties for a violation of 18 U.S.C. § 2251(a) are set forth in subsection (e).  This subsection provides in pertinent part: "Any individual who violates . . . this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward . . . such person shall be fined under this title and imprisoned for not less than 25 years nor more than 50 years . . . ."  18 U.S.C. § 2251(e).

engaged in "sexually explicit conduct."  For purposes of § 2251(a), "sexually

explicit conduct" is defined as an "actual or simulated–. . . lascivious exhibition

of the genitals or pubic area of any person."  18 U.S.C. § 2256(2)(A)(v).  Helton

contends the videotape of B.M. was not: (a) an exhibition of her genitals or pubic

area; or (b) lascivious.

On the mixed question of whether the facts satisfy the proper legal

standard, we conduct a de novo review where, as here, the question primarily

involves the consideration of legal principles.  *See United States v. Patzer*, 15

F.3d 934, 939 (10th Cir. 1993); *see also United States v. Rayl*, 270 F.3d 709, 714

(8th Cir. 2001) ("[T]he meaning of 'lascivious exhibition of the genitals' is an

issue of law."); *United States v. Knox*, 32 F.3d 733, 744 (3d Cir. 1994) ("Because

the meaning of the statutory phrase 'lascivious exhibition' . . . poses a pure

question of law, our review is plenary."); *but see United States v. Boudreau*, 250

F.3d 279, 283 (5th Cir. 2001) (reviewing for clear error the district court's

determination that a photograph did not depict a lascivious exhibition of a

minor's pubic area).

Government's Exhibit 1 clearly constitutes an exhibition of the genitals or

pubic area within the meaning of the statute.[4]  The statute does not specify the

_____

[4] The Third Circuit has cautioned against interpreting the word "'exhibition'
divorced entirely from the context in which it is used" – "lascivious exhibition."  *See
Knox*, 32 F.3d at 745; *see also Deal v. United States*, 508 U.S. 129, 132 (1993) (it is a
"fundamental principle of statutory construction (and, indeed, of language itself) that the
meaning of a word cannot be determined in isolation, but must be drawn from the context

genitals or pubic area must be fully or partially uncovered in order to constitute an exhibition and, like our sister circuits, we decline to read such a requirement into the statute. *See Knox*, 32 F.3d at 744, 746 (rejecting the government's argument that "the depiction in question [must] render the minor's genitals or pubic area visible or discernable in some fashion in order to constitute an exhibition" and holding "nudity or discernability are not prerequisites for the occurrence of an exhibition"); *see also United States v. Carroll*, 190 F.3d 290, 298 n.7 (5th Cir. 1999), *vacated on other grounds*, 227 F.3d 486 (5th Cir. 2000) ("Lascivious exhibition of the genital or pubic area does not require full or partial nudity.").

In *United States v. Horn*, the Eighth Circuit held a reasonable jury could conclude that images of minor females at a beach wearing swimsuit bottoms constituted a lascivious exhibition of the pubic area because of the way in which the pictures were framed. 187 F.3d 781, 789-90 (8th Cir. 1999). The same holds true here. The tape Helton produced was designed to, and succeeded in, capturing an image of B.M.'s minimally-clothed genitals or pubic area. Though covered, the image of B.M.'s genitals or pubic area is the focus of the camera for over one

---

in which it is used"). We do not adopt a two-pronged approach nor do we accept Helton's argument that the determination of whether an exhibition of the genitals or pubic area exists constitutes a "[t]hreshold [i]nquiry." (Appellant's Opening Br. at 19.) We address the exhibition and lascivious requirements separately, though cognizant of their interdependency, simply because Helton separately challenges both and the district court separately considered both.

minute. As such, it easily satisfies the statutory requirement of being an exhibition of the genitals or pubic area.

We next consider whether the exhibition is "lascivious." The word "lascivious" is not defined in the statute. We have previously held "'lascivious' is no different in its meaning than 'lewd.'" *United States v. Reedy*, 845 F.2d 239, 241 (10th Cir. 1988) (quotations omitted); *see also* BLACK'S LAW DICTIONARY 886 (7th ed. 1999) (defining "lascivious" as "tending to excite lust; lewd; indecent; obscene"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1274 (1993) (defining "lascivious" as "1: inclined to lechery: LEWD, LUSTFUL . . . 2: tending to arouse sexual desire: LIBIDINOUS, SALACIOUS").[5]

Along with all of the other federal appellate courts who have considered the question, we have looked to a set of six factors developed in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), to determine whether an exhibition is lascivious within the meaning of the statute. *See Wolf*, 890 F.2d at 244-47; *see also United States v. Rivera*, 546 F.3d 245, 250 (2d Cir. 2008) ("Although the *Dost* factors are not definitional, they are useful for assessing the sufficiency of

---

[5] Interestingly, the original legislation, the Protection of Children Act of 1977, used the term "lewd" instead of "lascivious." That Act was amended and renamed the Child Protection Act of 1984 following "the Supreme Court's decision in *New York v. Ferber*, 458 U.S. 747 (1982), wherein the Court recognized child pornography as a category of material outside First Amendment protection regardless of whether it was obscene under *Miller v. California*, 413 U.S. 15 (1973). . . . The amendment included the substitution of 'lascivious' for 'lewd.'" *See United States v. Wolf*, 890 F.2d 241, 243 n.2 (10th Cir. 1989).

evidence, and pose questions that are (at least) germane to the issue of lasciviousness."); *United States v. Hill*, 459 F.3d 966, 972 (9th Cir. 2006) (noting the district court's critique of *Dost* but stating "we do not think it necessary to adopt a new test or to deny the utility of *Dost*"); *Carroll*, 190 F.3d at 297 ("We apply the six factor *Dost* test to determine whether a visual depiction of a minor constitutes an actual 'lascivious exhibition of the genitals or pubic area' . . . ."); *United States v. Amirault*, 173 F.3d 28, 32 (1st Cir. 1999) ("We believe that the *Dost* factors are generally relevant and provide some guidance in evaluating whether the display in question is lascivious."); *Horn*, 187 F.3d at 789 ("In attempting to determine the limits of this category of sexually explicit conduct, we find helpful the six criteria suggested in [*Dost*]."); *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) ("In determining the meaning of 'lascivious exhibition of the genitals or pubic area' . . . we are aided in particular by [the *Dost* factors]."). These factors are:

1)  whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2)  whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3)  whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4)  whether the child is fully or partially clothed, or nude;

5)  whether the visual depiction suggests sexual coyness or a

-10-

willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Dost*, 636 F. Supp. at 832. In discussing these factors in *Wolf*, we "wholly agree[d] with the Third Circuit [in *Villard*] that all six factors need not be present in order to bring the depiction under the proscription of the statute." 890 F.2d at 245. And we noted in a footnote that we did not "hold that more than one *Dost* factor must be present." *Id.* at 245 n.6.

The district court found the first *Dost* factor was present. The court afforded the second factor "some weight" because it found the setting to be "sexually suggestive" based on Helton's staging of the video camera. (R. Vol. I, Doc. 26 at 11.) The court found the third and fifth factors were not present and the fourth factor was not present in any significant degree. The court concluded the sixth factor was present when analyzed subjectively. The court determined a subjective analysis was appropriate because such analysis "best serves the statutory purpose of prohibiting the sexual exploitation of children." (*Id.* at 12.)

Helton contends the district court erred in analyzing the sixth factor subjectively and asserts the video he created is not the kind the statute intended to reach. We disagree. In *Wolf*, "[w]e agree[d] with the Ninth Circuit that . . . lasciviousness is not a characteristic of the child photographed but of the exhibition that the photographer sets up for an audience that consists of himself or

-11-

like-minded individuals."  890 F.2d at 247 (discussing *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987)); *see also Horn*, 187 F.3d at 790 ("The 'lascivious exhibition' is not the work of the child, whose innocence is not in question, but of the producer or editor of the video."); *Knox*, 32 F.3d at 747 ("[A] 'lascivious exhibition of the genitals or pubic area' of a minor necessarily requires only that the material depict some 'sexually explicit conduct' by the minor subject which appeals to the lascivious interest of the intended audience.").

"A depiction of a child is a lascivious exhibition of the genitals" when, *inter alia*, "the image is intended to elicit a sexual response in the viewer."  *Rayl*, 270 F.3d at 714 (quotations omitted).  *Compare Carroll*, 190 F.3d at 298 (affirming defendants' sentences for violating § 2251(a) where, *inter alia*, "the totality of the circumstances . . . indicate that the video was intended to elicit a sexual response in the viewer"), *with Boudreau*, 250 F.3d at 283 (affirming the district court's conclusion that a photograph did not depict a lascivious exhibition of a minor's genitals or pubic area where, *inter alia*, "the photo . . . did not appear to be designed to elicit a sexual response").  Thus, in *Horn*, the Eighth Circuit rejected the defendant's argument "that an otherwise innocent video tape of nude children cannot be made into a lascivious exhibition of the genitals by freeze-framing."  187 F.3d at 790.  The court explained: "By focusing the viewer's attention on the pubic area, freeze-framing can create an image intended to elicit a sexual response in the viewer."  *Id.*

-12-

Defined in this way, our task is simply to determine whether Helton intended the videotape he produced to elicit a sexual response in the viewer—defined as himself and like-minded individuals. Clearly, he did. The trial court found Helton had an "extreme interest in visual depictions of female underpants." (R. Vol. I, Doc. 26 at 13-14.) Helton does not appeal from this finding and would be hard-pressed to do so in light of the volume and type of materials found in his home and vehicle. The video he produced, containing a visual depiction of a young girl in her underpants, was intended to elicit a sexual response in Helton and like-minded individuals.

Like the district court, we recognize Helton's conduct was not as egregious as the conduct of others convicted of violating 28 U.S.C. § 2251(a). And the 25-year mandatory minimum sentence may be more than condign punishment.[6] But the government's discretion in charging is beyond the purview of our review. *See United States v. Robertson*, 45 F.3d 1423, 1437-38 (10th Cir. 1995) (noting "[c]harging decisions are primarily a matter of discretion for the prosecution" and

---

[6] Helton was originally charged in State court with violating Oklahoma's "Peeping Tom" statute. Helton's counsel advised the trial court that charge was dismissed when the federal indictment was filed. Though the record does not contain the statutory reference, we presume Helton was charged with violating Okla. Stat. Ann. tit. 21, § 1171(B) which makes it a felony to: "use[ ] . . . video equipment in a clandestine manner for any illegal, illegitimate, prurient, lewd or lascivious purpose with the unlawful and willful intent to view, watch, gaze or look upon any person without the knowledge and consent of such person when the person viewed is in a place where there is a right to a reasonable expectation of privacy . . . ." A violation of this statue is punishable by imprisonment in the State Penitentiary for a term of not more than five years, a fine not exceeding $5,000, or both. *See id.*

prosecutorial discretion in charging "is nearly absolute"). Our task is to determine solely whether the district court erred as a matter of law in concluding the videotape Helton produced (government's Exhibit 1) was a lascivious exhibition of the genitals or pubic area of B.M. We see no error and fully agree with the district court's conclusion.

B. Sentence

Helton contends the court erred in overruling his objection to the application of the 25-year mandatory minimum sentence contained in 18 U.S.C. § 2251(e) because his prior conviction was neither charged in the indictment nor proved beyond a reasonable doubt. He raises this issue to preserve his argument that *Almendarez-Torres v. United States*, should be overruled. 523 U.S. 224 (1998).

The court overruled this objection based on *Almendarez-Torres* where the Supreme Court held the existence of a prior conviction is a sentencing factor and not a separate element of the offense which must be pled in an indictment. *See id.* at 228-35. As a result, the government is not required to allege in the indictment the fact or existence of a prior conviction. *See id.* at 226-27; *see also United States v. Martinez-Villalva*, 232 F.3d 1329, 1332 (10th Cir. 2000).

The holding of *Almendarez-Torres* has been questioned by the Supreme Court. *See Apprendi v. New Jersey*, 530 U.S. 466, 489 (2000) (stating "it is arguable that *Almendarez-Torres* was incorrectly decided"); *Shepard v. United*

-14-

*States*, 544 U.S. 13, 27 (2005) (Thomas, J., concurring in part and concurring in the judgment) ("[A] majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided."). Nonetheless, the Supreme Court has yet to overrule the case and we are bound by it. *See United States v. Moore*, 401 F.3d 1220, 1224 (10th Cir. 2005).

**AFFIRMED.**

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge